THEODORE A. SIMMONS *& al. versus* CHARLES A. CURTIS *& al.*

One partner, after the dissolution of a co-partnership, has no power to make new contracts, or to create new liabilities to bind the firm, without some special authority to do so. Such authority may be inferred from all the circumstances of the case.

A *valid* assignment of all the partnership estate, for the benefit of creditors of the firm, would, *ipso facto,* be a dissolution.

*But* an assignment, void for illegality, does not work such dissolution.

An assignment for the benefit of creditors, wherein the substantial requirements of the statute are not complied with, is void.

On REPORT from *Nisi Prius*, MAY, J., presiding.

ASSUMPSIT on a note payable to plaintiffs or order, on demand, with interest.

Samuel S. Curtis, Oscar H. Sampson and Joseph Curtis, doing business under the firm name of Curtis, Sampson & Co., were admitted, on petition as subsequent attaching creditors, to defend this suit.

After the evidence was in, the case was withdrawn from the jury, and referred to the full Court on report. The points in issue will fully appear in the opinion of the Court.

*Converse & Hubbard*, for plaintiffs.

The instrument, intended as an assignment, is utterly void. By the statute of 1844, c. 112, § 1, all the property of the assignor should be conveyed, except that exempt by law from attachment. The instrument in this case, covers only the goods, debts, &c., belonging to the firm of Curtis & Wright. They make oath that only such property is assigned.

If it be said, that by § 2 of the same chapter, all the property passed, we answer, that it was not so intended by the Legislature. That provision relates to property that may not be named or included in the schedule, usually annexed to the assignment. The assignor having assigned all his property not exempt by law from attachment, and made oath that he has done so, without which, the assignment is declared void, in that case all his property shall pass.

But in this assignment, the assignors do no such thing, and therefore, by the very same statute, it is declared void.

2. The case finds that no bond was filed by the assignee within 20 days, agreeably to the requirements of the statute of 1849, c. 112; and it is contended, that he could not enter upon the trust, and was not assignee in fact until he had so done.

As against the plaintiffs, as attaching creditors, the statute declares it void.

We do not question that a valid assignment would dissolve the co-partnership, but an intention to do an act that would dissolve an attachment, unless done, amounts to nothing.

The death of a partner operates a disssolution, but if both parties intend to commit suicide on a time fixed, and they jump into water too shoal to drown them, their intention would amount only to a ducking, and that would not dissolve their business relations.

*Tallman & Paine,* for defendants.

The note in suit was made by Wright, one of the defendants, and if prior to the 23d of February (the date of the note,) the defendant firm had been dissolved, Wright had no authority to subscribe the co-partnership name, and the note is void. *Graves* v. *Murray,* 6 Cowan, 701 ; *Sanford* v. *Michels,* 4 Johns. 224.

After dissolution, the member authorized to settle the business of the firm, cannot give a co-partnership note in payment of a co-partnership debt. *Perrin & al.* v. *Keen & al.,* 19 Maine, 355.

The partnership of defendants was dissolved on the 2d of February, 1855, by the assignment, and the execution and acceptance thereof by the assignee; or at all events, when notice was published.

By the law of 1844, c. 112, § 2, "No assignment shall be valid unless sworn to; nor unless the assignee shall give the notice required in this Act."

The certificate of the due administration of the oath is indorsed on the assignment. And according to the testimony of Call, the notice was published within fourteen days.

In the notice, the date of the assignment is misrecited; but the date was not required to be set out, and the date may be rejected as surplusage.

The omission to file a bond in the probate office, for twenty days, renders the assignment invalid only as to attaching creditors. Laws of 1844, c. 113, § 1,

It is still a valid assignment as against the assignee, whether sued by creditors for their dividend, or by the assignors for the surplus. The assignee could not plead his own neglect of duty.

By force of this assignment, all the property of the assign-

ors, whether specified or not, vested in the assignee. Laws of 1844, c. 112, § 2.

Therefore the partners were deprived by their own act of the means of promoting the joint enterprize.

And the assignment was *ipso facto* a dissolution.

*Again.* Whether the assignment was valid or invalid, the Court will infer a dissolution.

It is a question of intent. What did the partners mean? No form of words is necessary to effect a dissolution. No words are necessary.

Suppose the partners dispose of their stock of goods and migrate to other States, would not such circumstances abundantly prove a dissolution? And did not the partners in this case manifest their intention quite as clearly?

No notice of the dissolution to the plaintiffs under the circumstances was necessary, or if necessary, notice to their attorney, (Converse,) was notice to them. *Whitman* v. *Leonard,* 2 Pick. 177; *Kent* v. *Charleston* 2 Gray, 281.

The giving of a new note to Curtis, Sampson & Co., by Curtis, the defendant, did not revive the co-partnership. Nor was it a ratification of the act of Wright.

The giving of the note to the plaintiffs was a fraud, and the note therefore void. Exactly in point, is *Whitman* v. *Leonard,* 2 Pick. 177, as explained in *Arnold'* v. *Brown,* 24 Pick. 89.

MAY, J.—Notwithstanding a co-partnership after its dissolution may be regarded as subsisting in a qualified sense, for the settlement of its affairs, still, it seems to be well settled, that one partner, after its dissolution, has no power to make new contracts or to create new liabilities to bind the firm, without some special authority so to do. Such authority may be inferred from all the circumstances in the case, but without it he cannot give a co-partnership note in payment of a co-partnership debt. *Milliken* v. *Loring,* 37 Maine, 408; *Sanford* v. *Michels,* 4 Johns. 224; *Perrin & al.* v. *Keen & al.* 19 Maine, 355.

The note in suit bears date Feb. 23, 1855, and purports to have been given by Curtis & Wright, a firm consisting of Charles A. Curtis and Henry Wright. They make no defence, but Samuel S. Curtis, Oscar H. Sampson and Joseph Curtis, a firm doing business under the name of Curtis, Sampson & Co., having been admitted on petition as subsequent attaching creditors to defend this suit, appear and contend that the defendants are not liable on the note, because it was given by Wright without any authority from his co-partner, *after* the firm of Curtis & Wright had been dissolved; and if such be the fact the position is well taken. The case shows that the note was given by Wright *in the name of the partnership* for a debt against the firm, and that Wright had no other authority to give it than what a co-partnership implies. It therefore becomes important to determine whether there had been a dissolution of such connection when the note was given. This is a question of fact to be determined from the evidence in the case. *Taft* v. *Buffum,* 14 Pick. 322.

It appears that the defendants, as co-partners, on the second day of Feb., 1855, made an assignment " of all their property, estate, rights and credits *belonging to said partnership,* of every description, consisting of goods in the store and shop, stock, notes, accounts," &c., to one Everett W. Stetson, for the benefit of their creditors. Said assignment was duly executed by said Curtis & Wright and said Stetson, and also by the firm of L. B. Usher & Co., as creditors. Said assignee on the day of the assignment took possession of the stock in trade and books of the defendants, but did not give any bond or file any copy of the assignment in the probate office as is required by the statute of 1849, c. 113, § § 1 & 4. It further appears from the certificate of the magistrate upon said assignment, that said assignors, on the day of its date, made affidavit that they had " placed and assigned all their property, rights, estate and credits *belonging* to the co-partnership of Curtis & Wright of every description"· in the hands of said Stetson for the benefit of their creditors.

It is contended in defence, that these proceedings operated

a dissolution of the co-partnership of Curtis & Wright; and it cannot well be doubted that a valid assignment of all the partnership estate, real and personal, made for the benefit of creditors by a firm, would *ipso facto* be a dissolution. Such an assignment necessarily implies an entire suspension and winding up of all co-partnership affairs; and by it the members of the firm are at once deprived of all the means necessary for the transaction of the company concerns, and so must be presumed to have intended what their act clearly implies. But if such assignment be absolutely void and the attempt to assign wholly abortive, it is not perceived how such *an unexecuted intention to assign,* on the part of the members of the firm, can properly be regarded as a dissolution of the firm. By such an assignment the co-partnership is not divested of the ownership of its property and effects, and would still be entitled to be re-invested with the immediate possession of the same; and we think it may reasonably be presumed that no dissolution of the connection was intended or expected unless the assignment should take effect. Suppose a solvent co-partnership should make a sale of its entire property and thus divest itself of all means for carrying on its proper business, and immediately after the execution of the necessary papers, and the delivery of the property, should learn that the whole transaction on the part of the purchaser was a fraud, could not the *co-partnership, as such,* avail itself of the fraud to set aside the sale, and, upon a restoration of the property, would not the members of the firm be regarded still as co-partners in the same manner as if no such fraudulent sale had been made? In such a case, when the sale is not void but voidable, can it be that there would be a dissolution, so that the co-partnership, as such, could not avoid it, and, if avoided, would not the members of the firm *eo instante,* without any other act on their part, still retain all the powers incident to the co-partnership? Would it not be absurd to suppose that they intended a dissolution, if the sale should prove to be without effect? The act of rescission could not, with propriety, be regarded as the formation of a new partnership,

but only as evidence of the continuance of the old one. If then, in the case under consideration, it should turn out, that the act by which the defendants, as partners, undertook to divest themselves of the partnership property for the benefit of their creditors, was absolutely void, we have no doubt that the mere intention to dissolve their firm, which arises only by implication from such act, must be regarded as falling with the act itself.

It therefore becomes important to determine whether the assignment proved in this case, is valid or not. That it is void as against attaching creditors, is not denied. The neglect of the assignee to give the bond required by the statute, is decisive upon this point. Stat. 1849, c. 113, § 1. But our inquiry now is whether it is not absolutely void.

Prior to the statute of 1836, c. 240, voluntary assignments made *bona fide* by debtors directly to, or in trust for all or any of the creditors of the assignor, if accepted by them, were held valid; but that statute expressly provided that " no assignment hereafter made by any debtor in this State, for the benefit of his creditors, shall be valid, except the provisions of this Act be complied with;" and under this statute, this Court decided, that an assignment which provided only for such creditors as should consent to discharge the assignor from any balance which might not be received under the assignment, was void. *Pearson & al.* v. *Crosby & al.*, 29 Maine, 261. This statute was expressly repealed by the statute of 1844, § 5. By this last statute, which is still in force, it is provided in § 1, that " all assignments made by debtors in this State, for the benefit of their creditors, shall provide for an equal distribution of all their estate, real and personal, among such of their creditors, as, after notice as herein provided, become parties to said assignments, in proportion to the amount of their respective claims, excepting such property of said debtors as may by law be exempt from attachment;" and the same section further provides, that " in all such assignments, the assignor or assignors shall make affidavit to *the truth thereof,* a certificate of which affidavit shall be made upon said as-

signment by the magistrate before whom the same may be taken."

By a fair construction of these provisions of the statute, the defendants were bound to provide in their assignment for an equal distribution of all their estate, real and personal, not exempt from attachment, among such of their creditors as should become parties to it; and to make affidavit that said assignment embraced the whole of such estate. The design of these provisions undoubtedly is, to give assurance to the creditors, that they will receive their just proportion of the avails of the whole estate which is by law liable for the payment of their debts, if they shall become parties to the assignment. It is not sufficient for a co-partnership to assign only the co-partnership property. It must appear also that the private property of the individual partners, not exempt from attachment, which is liable for the partnership debts, is in some way embraced in the assignment; and the oath of the assignors must verify such fact. By the second section of the same statute, it is provided, that "no assignment shall be valid, unless sworn to, nor unless the assignee or assignees shall give the notice required in this Act." We think the assignment made by the defendants, being limited, as it is in its terms, *to the property, estate, rights and credits belonging to the co-partnership of Curtis & Wright, and the certificate thereon, showing only that they made oath or affidavit that they had placed and assigned all such property in the hands of the assignee,* is not a compliance with the foregoing requirements of the statute. The assignment should contain some language, to show that the private property of each of the partners, not exempt from attachment, was intended to be assigned; yet there is not one word in it from which such intention can be inferred; but on the contrary, the language used clearly excludes it, and implies the possession of such property. In the case of *Merrill* v. *Winslow,* 29 Maine, 58, the Court held that an assignment made by a general partner, in his own name, without reference to the co-partnership, which was special, and conducted in his name alone, did not embrace

the co-partnership property, and we cannot doubt that the assignment in the present case embraces only the partnership property.

But it is contended on the part of the defence, that the assignment in this case operates upon the whole property of the assignors, co-partnership and private, by virtue of the provisions of the statute of 1844, § 2, which are, that " all assignments made by any debtor or debtors, for the benefit of any one or more of his creditors, shall be construed to pass all the property, real and personal, of such debtor or debtors, not exempted by law from attachment, whether *specified* in such assignments or not." The object of this provision is to provide, that a general description of the property shall be sufficient; but we think there must be some language used, from which an intention to assign the property can be inferred. It would be unreasonable to hold, or suppose, that an assignment of a stock of goods in a certain store should pass ships and farms, or that an assignment of a horse for the benefit " of one or more creditors," should pass a stock of goods. If it be said, that the case does not show that the defendants had, at the time of the assignment, any separate property belonging to them or either of them, we think the want of such property is not to be assumed, when the oath of the parties making the assignment does not negative the fact. The assignment should purport to be of the whole property liable for the payment of debts, or at least it should use language broad enough to embrace it, if any exist. We think therefore, that as the assignment in this case is limited to the partnership property of the defendants, and as the affidavit upon it does not import that such property was the only property of the defendants liable for the payment of their debts, it is not such an assignment, and so sworn to, as to make it valid within the true intent and meaning of the statute. It is therefore void, and being ineffectual to pass the property of the co-partnership of Curtis & Wright to the assignee, it is not sufficient, in connection with the other evidence in the case, to authorize us or a jury to say that said

co-partnership was dissolved thereby; and the fact that both of the defendants, subsequent to the making of said assignment, gave notes to the creditors of the firm in the partnership name, in payment for debts not then due, is somewhat corroborative of this view of the case.

But it is further contended in defence, that the giving of the note in suit was a fraud upon the other creditors of the firm. It appears to have been given for a debt honestly due, and whether such debt was payable at the time does not distinctly appear. The right of a debtor to prefer one creditor to another, cannot be questioned; nor does the fact, that in the present case such preference was given to the plaintiffs by only one of the partnership defendants, change the rule. The defendants must be defaulted, and the plaintiffs have judgment for the amount of the note and interest.

TENNEY, C. J., and RICE, APPLETON, and CUTTING, J. J., concurred.