## DERRY BANK v. DAVIS.

Where the members of a firm, describing themselves as partners, although signing their individual names, made an assignment of all their property of every description, to be divided among all the creditors of the assignors, naming them separately;

*Held*, that the joint property alone was assigned; therefore the assignment was not valid under our statute, and that the assent of creditors could not be presumed.

An assignment, not in accordance with the provisions of the statute, is, nevertheless, valid, if assented to by all the creditors.

THE questions arise upon the disclosure of Charles W. Webster, the alleged trustee of the principal defendants, Edward W. and Charles F. Davis. It appears that the principal defendants had made an assignment of all their property, estate, rights, credits, &c., to the trustee, for the payment of all their debts, &c.

This assignment was dated June 10, 1861. In it Edward W. Davis was described as of Cambridge, Ms., and Charles F. Davis as of Derry, N. H.; they being partners in the boot and shoe business at said Derry; Charles W. Webster, the assignee, as of Boston, Ms. The assignment was properly sworn to under the statute, but has never been acknowledged or recorded, and there is only one witness to any of the names. Two witnesses appear on the paper, but only one witness was present when either party signed it. A large portion of the creditors reside in Massachusetts. Under this assignment Webster had taken possession of the personal property of said firm at Derry. It does not appear that Charles F. Davis owned any real estate, or that either member of the firm owned any in New-Hampshire. Edward W. Davis had an interest in certain real estate in Cambridgeport, Ms., in common with one W. Davis, and the said Webster in his disclosure says that the said Edward W. Davis' interest in the same is, from the best information he can obtain, valueless, and that the property is mortgaged for more than it will sell for. But according to a schedule of said property with the incumbrances upon it, which has been furnished to said trustee by said E. W. Davis, in which he gives the valuation of the property, it appears that the interest of said E. W. Davis in the same is $1,900 over and above all incumbrances. The trustee says in his disclosure: "Up to May 5, 1861, I lived with my family at Dorchester, Ms., where I own a dwelling-house. On that day I moved with my family to Boscawen, N. H., and on the same day rented my house at Dorchester, which has since been occupied by a tenant."

He says that at the date of the assignment he was, ever since has been, and is now, a citizen and resident of Boscawen, N. H., but keeps a commission store in Boston, where he has long done and still continues to do business.

The only question is whether the assignment is valid or void by the laws of New-Hampshire.

The disclosure of the trustee and the other papers connected therewith were referred to as parts of this case.

*Bartlett*, and *H. F. French*, for the plaintiff.

*George, Foster & Sanborn*, for the trustee.

BELLOWS, J.   In this case the principal debtors, residing, one in Massachusetts and the other in New-Hampshire, and carrying on the shoe business at Derry, in this State, as partners, made an assignment on the 10th day of June, 1861, describing themselves as partners, but signing their individual names, and not the name of the firm.   The assignment purports to grant and assign "all our property, estate, rights and credits, of every description"—" to be divided among all the creditors of the said E. W. Davis and Charles F. Davis"; and the plaintiff, a creditor of the firm, having summoned the assignee as the trustee of the principal debtors, the question is whether the assignment is good and valid as against this plaintiff.

One objection urged by the plaintiff is, that the assignment does not convey both the partnership and individual property; and unless it does it is clearly invalid under our statute; because, although it has the character of a general assignment, it would not provide for the distribution of all the debtors' estate among their creditors. Such is the doctrine, under similar statutes, of *Simons* v. *Curtis*, 41 Me. 373, and *Wyles* v. *Beals*, 1 Gray 336.   The question then is, Does the assignment embrace both descriptions of property?   As a general principle, where two or more persons undertake, at the same time, for the same act, the contract will be deemed joint only, unless the contrary appears by the terms of the promise or the nature of the understanding; as in the familiar cases of bills of exchange, promissory notes, bonds, covenants, &c.   1 Ch. Pl. 41, and cases cited; Chitty Con. 96.   Where the words creating a liability are ambiguous, so that they might be construed either way, then the whole instrument may be examined for the means of determining its construction.   *Sorsbie* v. *Park*, 12 M. & W. 145, and cases cited, and Chitty on Con. 96.   If the terms here were to be regarded as ambiguous, we think there is nothing in the other parts of the instrument to justify a construction that would embrace both partnership and private property.   On the contrary, the description of the assignors as partners may well be supposed to denote that in making the assignment they acted as such; and the fact that they signed separately would not, we think, overcome the inference. That such importance can not be attached to this mode of signing appears from the case of *Maynard* v. *Fellows*, 43 N. H. 255.

If, indeed, such effect were to be given to the separate signatures, and the statement that they were partners were to be regarded merely as *descriptio personæ*, as suggested by the plaintiff's counsel, it would prove too much, by showing that the assignment embraced only the separate property of the partners.   But we are inclined to think that the rules which govern the interpretation of executory contracts may properly be applied to those which are executed like the one before us; and as there is nothing to control the terms here used, the assignment must be regarded as embracing only the joint property of the assignors.   If the purpose be to assign both the joint and separate property, it is easy to insert it in explicit terms, and such, we think, is the usual practice in such cases.   The importance of doing so, in cases of assignments under our statute, is greatly enhanced by the provision which requires a verification

upon oath of the fact that all the assignor's property has been assigned; and to make this provision effective, and to prevent evasion, all ambiguity should be avoided.

In the case of *Merrill* v. *Wilson*, 29 Me. 58, there was a special partnership conducted in the name of one of the partners, Charles Godfrey, and an assignment was made in his name of all his stock in trade, and all his property of every description, without using any words to show that the partnership property was intended to be assigned. It was held that the private property only of the assignor was embraced in the assignment, and that the partnership property was subject to be taken for the debts of the company. See, also, *Simons* v. *Curtis*, 41 Me. 373–381.

Our conclusion then is, that this assignment is not in accordance with the provisions of our statute, and therefore the assent of creditors can not be presumed. *Spinney* v. *Portsmouth Hosiery Co.*, 25 N. H. 18; *Hurd* v. *Silsby*, 10 N. H. 108.

This brings us to the question whether the plaintiff has assented to the assignment, so as to be bound by it. That a creditor may bind himself by his assent to an assignment which is not within the provisions of the statute is unquestionable. The purpose of this law was to restrain the making of assignments which, though apparently general, did not in truth include all the debtor's property, and which also distributed it unequally among his creditors without their assent; but it was not designed to interfere with the right of the debtor and his creditors, by agreement fairly entered into, to make application of the debtor's assets to the payment of his debts, in such way as it should be deemed just by them, either by direct transfer of such assets to the creditors, in payment or part payment of their respective claims, or by assignment in trust, and with their assent, to a third person for their benefit. And we conceive it to be quite clear that the power of the debtor and his creditors to enter into a composition by which the debtor shall retain a portion of his assets, and still be discharged on giving up the residue, is not affected by this statute, even though it be done by a general assignment. See *Wyles* v. *Beck*, 1 Gray 233; *Edwards* v. *Mitchell*, 1 Gray 239. What shall constitute a sufficient assent it is not necessary to inquire, because we think that what is stated is clearly insufficient in any view of the law that has been taken. In *Howland* v. *Binks*, 15 A. & E. (N. S.) 713, where an assignment was in trust for such creditors as, within sixty days, should come in and execute the deed, it was held that a verbal statement by a creditor that he was satisfied with it, was sufficient.

In the case now before us, although the evidence may show notice to the bank, it shows no action by it whatever, it not appearing that the cashier, in examining the schedule and advising as to the disposition of the assets, acted for the bank.

The result is, therefore, that the assignment, not being valid as against this plaintiff, the trustee must be charged. See *Hurd* v. *Silsby*, 10 N. H. 108; *Spinney* v. *Hosiery Co.*, 25 N. H. 9.