## LAWRENCE et al. v. P. E. SHARPLESS CO.

(District Court, E. D. Pennsylvania. March 17, 1913.)

### No. 637.

1. TRADE-MARKS AND TRADE-NAMES (§ 21*)—PRIOR USE WITH REFERENCE TO DIFFERENT ARTICLE.

The use of the figure of a cow on defendant's butter prints, prior to complainant's use of the same figure as a trade-mark on cheese, would not invalidate complainant's trade-mark, if the figure was otherwise a valid trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 24; Dec. Dig. § 21.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 3*)—VALIDITY OF MARK—GENERIC AND DESCRIPTIVE MARKS.

The figure or symbol of a cow is generic and descriptive, and cannot, therefore, be appropriated as a valid trade-mark to be applied to butter, cheese, and dairy products.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. § 3.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 67*)—UNLAWFUL COMPETITION.

Where defendant appropriated complainant's marks on cheese packages in order to palm off defendant's goods as those of complainant, complainant was entitled to injunctive relief on the ground of unfair competition, though he was unable to establish a technically valid trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 78; Dec. Dig. § 67.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 70*)—INFRINGEMENT—UNLAWFUL COMPETITION.

Complainants habitually since 1895 manufactured and successfully sold Neufchâtel cheese labeled with the figure of a cow, printed in blue ink in a rectangular square on the tin-foil covering. Defendant, prior to 1907, deliberately put out a similar cheese with a label identical in form, color, and design, printed in blue on tin foil, and after 1907 knowingly continued the use of the label to enable him to supply his customers with such cheese, by which the public might easily be defrauded to believe the cheese to be complainants'. It also appeared that the similarity had deceived purchasers, and that complainants' trade, in consequence, had fallen off. Held, that complainants were entitled to an injunction restraining defendant from further using such label, on the ground of unlawful competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*]

In Equity. Bill by William A. Lawrence and another, doing business under the name of W. A. Lawrence & Son, against the P. E. Sharpless Company to restrain infringement of a trade-mark and unfair competition. Decree for complainants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

C. H. Duell, F. P. Warfield, H. S. Duell, and R. W. France, all of New York City, for complainants.

Hector T. Fenton, of Philadelphia, Pa., for respondent.

THOMPSON, District Judge. The complainants are in the business of making and selling domestic Neufchâtel cheese at Chester, Orange county, N. Y., where the business was established in August, 1862, by William A. Lawrence, who was the first person to make and, as late as 1875, was the only manufacturer of Neufchâtel cheese in this country. The Neufchâtel cheese made and sold in the business conducted by the complainants and their predecessors has had and has a favorable reputation, and has been and is widely sold in the state of New York and other states. In the year 1877 William A. Lawrence adopted as a trade-mark for Neufchâtel and cream cheese the figure of a cow, side view. On January 18, 1881, this label was registered in the United States Patent Office as a trade-mark, concerning which it was declared:

"The essential feature of which is the arbitrarily selected figure of a cow," and "the class of merchandise to which the trade-mark is appropriated is cheese, and the particular goods upon which I use my said trade-mark are Neufchâtel packages of cheese put up in one-quarter of a pound rolls and twenty-five and fifty rolls in a box. I have been accustomed to print or stencil it in black ink upon the outside of each box in which said cheese is packed for transportation."

During the early use of the trade-mark it was, as stated in the application for registration, stenciled upon the outside of the box which contained the individual cheeses, wrapped in paper. About 1895 William A. Lawrence adopted as a package for his cheese a tin-foil wrapper, upon which was printed in blue ink in the center of a rectangular border the figure of a cow, with the word "Neufchâtel" at the top, the word "trade-mark" and the words "Cream Cheese, Extra Quality," below. On January 26, 1904, this design was registered as a trade-mark for Neufchâtel cheese, and the statement set out:

"My trade-mark consists of the arbitrarily selected figure of a cow. This trade-mark has been continuously used in my business since August, 1877. The class of merchandise to which this trade-mark is appropriated is dairy products, and the particular description of goods comprised in such class upon which I use the said trade-mark is Neufchâtel cheese. The trade-mark is usually produced directly upon the tin foil or wrappers for the cheese and is likewise produced directly in or upon the boxes or other receptacles containing a number of packages."

On March 27, 1906, the design was again registered as a trade-mark by the firm of W. A. Lawrence & Son, the complainants, with the same description in the statement as in the registration of 1904. Since 1907 the complainants have used as a label upon their goods, printed in blue ink on a tin-foil wrapper, the same figure of a cow in a rectangular border, with the words "Reg. U. S." on one side, "Pat. Off." on the other, above the figure the words "Cow Brand," "Domestic," and below the figure the words, "Neufchâtel Cheese, Made in State of New York," and they have used the latter label continuously since that date.

The defendant and its predecessors have been engaged in the business of conducting a dairy for the production and sale of butter, cheese, and other dairy products since 1838, and during that time have used as a print upon their butter the figure of a cow (side view) surrounded by a circle, the words "P. E. Sharpless" in circular form above, and a design of leaves above and grass below the figure of the cow. In 1907 the defendant, which had been for several years making and selling a domestic Neufchâtel cheese, adopted as a label, printed in blue ink upon tin-foil wrappers, in which its cheese was packed, the figure of a cow in the center of a rectangular border in the same position as that upon the complainants' label, with the words "Trade-mark" below it, "Neufchâtel Cheese, P. E. Sharpless Co., Philadelphia, Pa.," above, to the left, "Absolutely Pure," to the right, "Fresh Daily," below "Main Office, Philadelphia, Pa." Subsequently the defendant adopted a label in the same shape, and printed in the same color of ink upon its tin-foil packages, with the following changes: Above the figure of the cow the words "P. E. Sharpless Co. Cheese." To the left the words "Made Daily," to the right, "At Concordville, Pa.," and below the words "Neufchâtel Style." The Neufchâtel cheese sold by the defendant with these labels has entered into competition with that sold by the complainants. The defendant justifies its use of the label by its prior and continuous use of the figure of a cow impressed upon its molds of butter, and upon the ground that the complainants' design is not a valid trade-mark for cheese, because the figure of a cow had been used by other manufacturers of cheese and manufacturers of butter and other dairy products before the complainants began its use, and that its use by the complainants has not been exclusive; as the figure of a cow had been used for cheese and other dairy products during the time the complainants claim to have been entitled to its use as a trade-mark.

[1] The use of the figure of the cow upon the defendant's prints of butter prior to its use by complainants for cheese would not, in my opinion, invalidate the complainants' trade-mark, if the figure of a cow is a valid trade-mark for cheese or butter. While butter and cheese are both dairy products, they are in such distinctly different classes that neither can be said in any sense to enter into competition with the other. Similar trade-marks put upon cheese as a product of one party could by no possibility deceive the purchaser intending to buy the butter of the other party, and vice versa. The defendant does not claim to have used its trade-mark of the side figure of a cow upon packages of cheese until after it had been for nearly 30 years in constant use on cheese by the complainants, and there is no proof that it was used by the defendant on cheese in such a manner as to give it any right thereto prior to the registration of the complainants' trade-mark in 1906. There was some evidence that more than 50 years ago the defendant's predecessor had impressed upon his molds of cottage cheese the same figure of a cow which he used upon his butter. There is no evidence of its continued use; and if continuous use in that manner would have constituted prior appropriation by the defendant the evidence is conclusive that it was abandoned many years before

1877, when the complainants first began to use it in stencil form upon their boxes containing packages of Neufchâtel and cream cheese. It continued to be used by the defendant exclusively as a print upon butter during the uninterrupted use by the complainants for nearly 30 years of their trade-mark upon cheese. The fact that the defendant was a maker and dealer in dairy products in general would not entitle it to appropriation of its trade-mark for butter to the whole field of dairy products, nor give it the right, as against its prior use upon cheese, to adopt it as a trade-mark for cheese. The defendant, in support of its claims of the use of the trade-mark prior to that of the complainants, has offered in evidence a trade-mark certificate showing a registration on October 10, 1882, by Mende Bros., of a trade-mark for cheese. The trade-mark in question is described as follows in the statement in the application for registration:

"Our trade-mark consists of a pictorial representation of a cow." "The essential feature * * * is the pictorial representation of a cow. This trade-mark we have used continuously in our business for sixteen years. The class of merchandise for which the said trade-mark is appropriated is cheese, and the particular description of goods comprised in such class upon which we use the said trade-mark is hand-cheese or hand-käse. We have been accustomed to stencil the trade-mark on the outside of the boxes containing the cheese."

Outside of the declaration contained in the statement that the trade-mark has been used continuously for 16 years, there is no evidence to show that its use antedated the time of registration. The Mende trade-mark was discontinued or abandoned in 1907 or 1908. The complainants knew of the use of this trade-mark for hand-cheese by Mende Bros., but did not object to it, because the hand-cheese did not enter into competition with their Neufchâtel cheese.

Evidence was also offered by the defendant to show the use of the trade-mark of a cow by Alvin R. Rieser, which trade-mark was registered May 8, 1894. In Reiser's statement accompanying his application, he states that:

"My trade-mark consists of the arbitrary word 'Anti-Rancidine.' This has generally been arranged as shown in the accompanying facsimile, which represents the form of a cow surmounted by the word 'Anti-Rancidine' in plain lettering; but the style of lettering is unimportant, *and the representation of the cow may be omitted* without materially affecting the character of my trade-mark, *the essential feature of which is the word 'Anti-Rancidine.'* This trade-mark I have used continuously in my business since the 20th day of March, 1894. The class of merchandise to which the trade-mark is appropriated is dairy products, and the particular description of goods comprised in such class upon which I have used it is milk, cream and butter, and cheese. It is my practice to apply my trade-mark to cans or packages containing the products by means of suitable labels on which it is printed, or by otherwise attaching it to the same."

Alvin F. Rieser died in June, 1910. It appears that he was in the wholesale butter and egg business; that the trade-mark in question was never used upon cheese; and that Alvin Rieser did not sell any cheese, except 60-pound cakes of store cheese.

The defendant offered in evidence a label, known as the Empire Brand, which was used as a wrapper by the Phœnix Cheese Company, and contained a side figure of a cow as a trade-mark upon cheese. It

is shown, however, that the complainants had objected to the use of this trade-mark, and that the Phœnix Cheese Company had discontinued its use on Neufchâtel cheese but it was still used on cream cheese. Its use on cream cheese was without the knowledge or consent of the complainants. Labels for cheese and butter, printed upon tin foil and containing varied representations of a cow, heifer, or cow's head, were offered in evidence for the defendant. In so far as the use of any of these labels bearing any similarity to complainants' label is concerned, it is conclusively shown that their use upon cheese was discontinued upon the protest of the complainants, or that they were never used upon cheese. As to other labels, the wrappers alone were offered in evidence by the defendant, without any evidence to show their use by any one. Under these conditions the evidence was immaterial and irrelevant.

[2] It is contended, however, by the defendant, and I think in that contention it is correct, that, even if the complainants' use of the cow trade-mark was exclusive as to Neufchâtel cheese, yet the figure of a cow is not capable of appropriation as a trade-mark by the complainants or defendant, or by any one, for any dairy product, because the symbol of a cow is generic, in that it is descriptive of the class of products produced of the milk of the cow. To entitle the complainants to the adoption of the figure of a cow as a trade-mark, not only must its use, but the right to its use, be exclusive; and such right cannot arise when others may employ the mark with as much truth as the complainants. All dealers in dairy products or manufacturers of dairy products could, with equal truth, represent the cow as the source of their product. Surely the figure of a cow could not be exclusively appropriated by a dealer in milk or cream. A dealer could not sell milk as cow milk or cream as cow cream and claim exclusive rights under that name; nor could he adopt the figure of a cow as a trademark for milk or cream. As butter and cheese are both produced from milk and cream, it follows, I think, that the figure of a cow or the word "cow" is not capable of exclusive appropriation by any dealer or manufacturer for butter or cheese.

As was said by the Supreme Court in the case of Canal Co. v. Clark, 13 Wall. 311, 20 L. Ed. 581:

"No one can claim protection for the exclusive use of a trade-mark or tradename which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured rather than protected; for competition would be destroyed. Nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trade-mark and the exclusive use of it be entitled to legal protection. As we said in the well-considered case of the Amoskeag Manufacturing Co. v. Spear, 2 Sandf. [N. Y.] 599: 'The owner of an original trade-mark has an undoubted right to be protected in the exclusive use of all the marks, forms, or symbols that were appropriated as designating the true origin or ownership of the article or fabric to which they are affixed; but he has no right to the exclusive use of any words, letters, figures, or symbols which have no relation to the origin or ownership of the goods, but are only meant to indicate their names or quality. He has no right to appropriate a sign or a symbol which, from the nature of the fact it is used to signify, others may employ with equal truth, and therefore have an equal right to employ for the same purpose.' "

See, also, Lawrence Manufacturing Co. v. Tennessee Manufacturing Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997; Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144.

In the case of Popham v. Cole, 66 N. Y. 69, 23 Am. Rep. 22, where the plaintiff claimed as a trade-mark for lard the figure of a hog, and the defendants, engaged in the same business, stamped their packages with a wild boar, the court said:

"The sign or symbol may be employed with equal truth in respect to any parts of the dead swine or the products of that animal put up for sale, and no one dealer has a greater right than any other to appropriate it to his own purposes. A serious question might be made as to the right of the plaintiff to appropriate to his exclusive use as a trade-mark the picture of the animal from which not only his lard, but the lard of all other dealers and manufacturers of lard, is derived, especially when the same emblem or symbol has been used by dealers in lard and other products of the slaughtered hog indiscriminately, as they have had occasion."

The case was decided, however, upon the ground that there was not sufficient resemblance in the mark used by the defendant to that used by the plaintiff to make it liable to deceive the public and enable the imitator to pass off his goods as those of a person whose trade-mark was alleged to be imitated.

[3] But it is not necessary that the complainant shall have established its right to a technical trade-mark to entitle it to relief, if. the court is satisfied that there was an intent upon the part of the defendant to palm off its goods as the goods of the complainant. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828.

[4] The complainants have habitually since 1895 labeled their cheese with the figure of a cow, printed in blue in a rectangular square upon tin foil, and by their skill and industry in the manufacture of their cheese have obtained for it a reputation and a market under the particular label and device used by them.

"That a descriptive word or sign or symbol, descriptive from popular use in a descriptive sense, may acquire a secondary significance denoting origin or ownership is true: But this secondary significance is not protected as a trade-mark, for a descriptive word is not the subject of a valid trade-mark; the only office of a trade-mark being to indicate origin or ownership. When a descriptive or geographical word or symbol comes, by adoption, to have a secondary meaning denoting origin, its use in this secondary sense may be restrained, if it amounts to unfair competition. In such case, if the use of it by another be for the purpose of palming off the goods of one as and for the goods of another, a court of equity will interfere for the purpose of preventing such a fraud. But this kind of relief depends upon the facts of each case, and does not at all come under the rules applicable to the infringement of a trade-mark." Lurton, J., in Vacuum Oil Co. v. Climax Refining Co., 120 Fed. 254, 56 C. C. A. 90.

"When the word is incapable of becoming a valid trade-mark, because descriptive or geographical, yet has by use come to stand for a particular maker or vendor, its use by another in this secondary sense will be restrained as unfair and fraudulent competition, and its use in its primary or common sense confined in such a way as will prevent a probable deceit by enabling one maker or vendor to sell his article as the product of another." Lurton, J., in Computing Scale Co. v. Standard Computing Scale Co., 118 Fed. 965, 55 C. C. A. 459.

A comparison of the label of the complainants, printed in blue upon tin foil, with that of the defendant, also printed in blue upon tin foil, discloses such identity in form, color and design as to indicate an intentional imitation. Furthermore, the testimony of Myer Berman and Reuben Berman, even when taken in connection with that of Pennock E. Sharpless, president of the defendant corporation, is sufficient to show at least that the defendant in 1907 deliberately and knowingly continued the use of the label in blue ink upon its tin-foil wrappers containing domestic Neufchâtel cheese in unfair competition with the complainants, if it did not, in fact, adopt the label in 1907 at the suggestion of Berman, for the purpose of enabling him to supply his customers with Neufchâtel cheese with the figure of a cow, when he (Berman) could not procure the "cow brand" cheese from the complainants. That the cheese put upon the market by the defendant under its label would be mistaken by the ordinary purchaser for that of the complainants is inevitable. The similar shape of the package and the fact that it was wrapped in tin foil are not, in themselves, evidence of unfair competition, as it is undisputed that Neufchâtel cheese has been generally wrapped in that manner by the trade for many years. But when accompanied by the striking and predominant feature of the complainants' label, the figure of a cow nearly identical in shape and form, printed in blue ink in a rectangular border of the same general size and shape as upon the complainants' label, the labels show such striking similarity as to mislead and deceive a purchaser who had been accustomed to purchasing complainants' goods into the belief that he was obtaining those goods. The complainants' "cow brand" had obtained a reputation, and, through the complainants' continued efforts to place under that label a superior article of cheese upon the market, it had a well-established business. The defendant placed its labels upon its packages of Neufchâtel cheese with an intent to encroach upon the market which had theretofore been occupied by the complainants, and to palm off its goods under the similar and misleading label. That the label is misleading and deceived purchasers is apparent, and it is also apparent that the complainants' trade has, in consequence thereof, fallen off. As was said by Judge Bradford in the case of Dennison Mfg. Co. v. Thomas Mfg. Co. (C. C.) 94 Fed. 659:

"Two rivals in business, competing with each other in the same line of goods, may have an equal right to use the same words, marks, or symbols on similar articles produced or sold by them, respectively; yet, if such words, marks, or symbols were used by one of them before the other, and by association have come to indicate to the public that the goods to which they are applied are of the production of the former, the latter will not be permitted, with intent to mislead the public, to use such words, marks, or symbols in such a manner, by trade dress or otherwise, as to deceive, or be capable of deceiving, the public as to the origin, manufacture, or ownership of the articles to which they are applied; and the latter may be required, when using such words, marks, or symbols, to place on articles of his own production, or the packages in which they are usually sold, something clearly denoting the origin, manufacture, or ownership of such articles, or negativing any idea that they were produced or sold by the former. In Coats v. Thread Co., 149 U. S. 562, 566, 13 Sup. Ct. 967 [37 L. Ed. 847], the court said: 'Irrespective of the technical question of trade-mark, the defendants have no right to dress their goods up in such manner as to deceive an intending purchaser, and in-

duce him to believe he is buying those of the plaintiff. Rival manufacturers may lawfully compete for the patronage of the public in the quality and price of their goods, in the beauty and tastefulness of their inclosing packages, in the extent of their advertising, and in the employment of agents, but they have no right, by imitative devices, to beguile the public into buying their wares under the impression they are buying those of their rivals.' "

And as to exclusiveness of use by a complainant in a case of unfair competition, Judge Dallas said in Actiengesellschaft, etc., v. Amberg, 109 Fed. 151, 48 C. C. A. 264:

"What, as respects exclusiveness of use, is requisite to support a demand by the originator of a distinctive style of dressing for his goods, that its use by others for similar goods shall be prohibited? It is no answer to his complaint against any particular person who has so used it to say that such person is not the only one who has done so, for a trespasser cannot justify upon the ground that others have committed like trespasses. Therefore the appropriation by the appellee of the appellant's box and labels is not excused by showing merely that others had similarly appropriated them. It is essential that it should also appear that the appellant had, by its acquiescence, abandoned its exclusive right, and, 'to establish a defense of abandonment, it is necessary to show, not only acts indicating a practical abandonment, but an actual intent to abandon.' Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19 [21 Sup. Ct. 7, 45 L. Ed. 60]."

I find that the defendant's use of its labels, "Complainants' Exhibit No. 3, Defendant's Cow Brand Tin-Foil Label," and "Complainants' Exhibit 20, Defendant's 1907 Label," is in unfair competition with the complainants in their business in the sale of domestic Neufchâtel cheese, and that the complainants' business has been injured thereby.

A decree may be entered for an injunction and an accounting.