JOHN O. JOHNSON AND ANOTHER v. JACOB J. BRUZEK.[1]

May 29, 1919.

No. 21,212.

**Partnership — assignment for benefit of creditors — sale of assets to one partner.**

1. A common law assignment for the benefit of creditors made by copartners dissolves the partnership. After dissolution copartners occupy a fiduciary relation to one another while winding up the affairs of the partnership and making distribution of partnership effects, but are not disqualified because of their relationship from individually purchasing the assets of the firm when offered for sale by their assignee. If there was no fraud or collusion, a sale so made to one partner cannot be questioned by the others.

**Same — sale of good will.**

2. The good will of a business is property, tangible only as an incident of, or as connected with a going concern, and is not susceptible of being disposed of independently. It passes to the purchaser of the assets of a partnership at an assignee's sale, although not expressly mentioned, where all such assets have been transferred.

**Same — evidence.**

3. The evidence shows that the sale of paartnership property by an assignee for the benefit of creditors of the former copartners was fairly made.

[1]Reported in 172 N. W. 700.

**Same.**

4. The fact that profits realized from the conduct of the business by such purchasers were used to pay off the original indebtedness of the firm, does not tend to prove fraud or collusion in connection with the sale.

**Same — action against one partner on book account.**

5. An action on a book account owing by one partner to the firm and included in the transfer of its assets to his former copartners, cannot be defeated on the ground that it grew out of partnership transactions and that the business has not been wound up.

**Same — payment.**

6. The court having found that such account was paid while the action was pending, it was error to order judgment for plaintiffs for the amount thereof.

Action transferred to the district court for Steele county to recover $153.77 upon a book account. The facts are stated in the opinion. The case was tried before Childress, J., who made findings and ordered judgment in favor of plaintiffs for the amount demanded. From an order denying his motion for a new trial, defendant appealed. Reversed with directions to amend the conclusions of law.

*Moonan & Moonan* and *E. W. Komarek,* for appellant.

*Roy H. Currie,* for respondent.

LEES, C.

Action on a book account. Defendant counterclaimed and demanded an accounting. The findings were in plaintiffs' favor. The appeal is from an order denying a new trial.

The parties became copartners in 1912 and thereafter conducted a general store at Blooming Prairie under the name of "Farmers Store." On January 5, 1916, they transferred to one Galbraith, in trust for their creditors, all their property, with certain exceptions of no consequence here. The instrument by which the transfer was made provided that Galbraith should convert the property into money and pay the claims of the creditors, who became parties to it, and, by signing it, bound themselves to refrain from enforcing their demands against the copartners.

After the creditors were paid in full, the residue of the property transferred, if any, was to be returned to the copartners.

The trustee took possession and made an inventory of the property. Its value at original cost was $14,385.62. The indebtedness of the firm was $6,651.70. There was doubt as to whether the property would sell for enough to pay the debts in full. Plaintiffs borrowed $3,000 and deposited it in a bank in Blooming Prairie, to be used if needed to pay the creditors. Upon due notice, the trustee, on January 25, 1916, received bids for the property. There were eight bidders. Plaintiffs' bid was $10,000. The next highest bid was $9,000. Their bid was accepted and the assets sold to them. In part payment of the purchase price, the $3,000 deposit was turned over to the trustee, together with plaintiffs' demand note for the balance. They have since been in possession of the property and have conducted a general store at the same location and under the name formerly employed by the firm. Shortly after making the purchase, they gave their notes to the creditors, got back their demand note from the trustee, and have since paid practically all of the original indebtedness of the firm. The funds used for that purpose have been derived from the income of the store.

By his counterclaim defendant attacked the validity of the sale to plaintiffs, on the ground that he was induced to consent to the transfer to the trustee by false representations made by plaintiffs and relied on by him, to the effect that the copartnership was largely indebted, could not borrow money to pay the debts, and that it was necessary and for the best interests of the copartners to make an assignment for the benefit of their creditors. He asked for an accounting and judgment for $8,000.

The book account on which the action was brought showed debits of $957.77 against defendant and credits of $804. It was among the accounts of the firm which were assigned to plaintiffs when they made the purchase from the trustee.

The court found that no fraud or deception had been practiced on defendant, and that plaintiffs were entitled to judgment against him for the unpaid balance of the book account. In the course of the trial it appeared that the account had been paid after the action was begun. In denying the motion for a new trial, the court amended the findings and conclusion of law referring to the account, by striking out certain

portions thereof. The finding that no fraud was practiced on defendant is amply supported by the evidence.

1. We first consider the legal effect of the trust agreement. Such an agreement is in substance a common law assignment for the benefit of creditors. Lucy v. Freeman, 93 Minn. 274, 101 N. W. 167. An assignment for the benefit of creditors, when made by the members of a copartnership, dissolves the partnership. Moody v. Rathburn, 7 Minn. 58 (89); Simmons v. Curtis, 41 Me. 373; McKelvy's Appeal, 72 Pa. 409; Davis v. Megroz, 55 N. J. Law, 427, 26 Atl. 1009; Wells v. Ellis, 68 Cal. 243, 9 Pac. 80; 30 Cyc. 655; Parsons (Theoph.), Part. *473. After dissolution, copartners occupy a fiduciary relation to one another in the winding up of the partnership affairs and the distribution of partnership effects. Hanson v. Metcalf, 46 Minn. 25, 48 N. W. 441; King v. Leighton, 100 N. Y. 386, 3 N. E. 594; Ehrmann v. Stitzel, 121 Ky. 751, 90 S. W. 275, 123 Am. St. 224. It is contended that in making the purchase from the trustee plaintiffs were buying property in which defendant had an interest, in view of the provision in the trust agreement that the residue of the property was to be returned to the copartners after the creditors were paid, and that by reason of this fact defendant is entitled to an accounting and to share in profits which plaintiffs may realize from their purchase. To sustain the contention, it is argued that one copartner is disqualified from purchasing firm property as this was purchased. Decisions of this court cited in support of the proposition are not directly in point. They state the general rule applicable to purchases of property made by one occupying a fiduciary relation to it or to those interested in it, Donahue v. Quackenbush, 62 Minn. 132, 64 N. W. 141; Gilbert v. Hewetson, 79 Minn. 326, 82 N. W. 655, 79 Am. St. 486, and to the right to profits realized by one copartner from a transaction involving the use of partnership funds. Church v. Odell, 100 Minn. 98, 110 N. W. 346; Treacy v. Power, 112 Minn. 226, 127 N. W. 936. There is no doubt about the rule, but in our opinion it has no application to the facts in the case at bar.

Where a partnership has been dissolved and the assets of the firm must be sold to pay its debts and wind up its business, the rule is that none of the partners is disqualified from becoming a purchaser at a sale not made by the partner so purchasing, and that, if the sale was

fairly made and there was no fraud or collusion, the transaction cannot be questioned by the other copartners. Valentine v. Wysor, 123 Ind. 47, 23 N. E. 1076, 7 L.R.A. 788; Baird v. Baird's Heirs, 1 Dev. & B. Eq. (21 N. C.) 524, 31 Am. Dec. 399; Roys v. Vilas, 18 Wis. 169; 2 Bates, Part. § 977.

The court has not found that there was any fraud or collusion in the sale to plaintiffs. It was a public sale. Defendant had notice of the time and place when bids would be received. He made no bid and did not object to the acceptance of plaintiffs' bid and the sale to them, until they brought this action to collect his individual indebtedness to the copartnershop. The evidence strongly tends to show that the sale was fairly made and that plaintiffs paid more than anyone else considered the property to be worth when it was sold. Defendant alone testified that the purchase price was inadequate and took the position that the making of the assignment and the subsequent sale were steps in a conspiracy between plaintiff and certain of the creditors to get rid of him as a partner. The findings of the trial court do not sustain this position, and they have our approval.

2. There is no force in the contention that plaintiffs bought firm assets with the firm's funds. They borrowed $3,000, and gave their personal notes for the loan, turning the money over to the trustees. They obligated themselves personally on their demand note to him, and later to the creditors on their notes to them. The personal liability of plaintiffs was substituted for that of the copartners for the original indebtedness. Defendant was thereby released from further responsibility thereon. It is immaterial that plaintiffs took the profits derived from their conduct of the business to pay these notes. Such profits belonged to them after they purcahsed the business. Defendant had no interest in either the profits or the business after January 25, 1916.

3. Defendant insists that he still owns an interest in the good will of the business. He testified that it was worth $3,000 and asks that plaintiffs account to him for its value. Even though there is no express mention of the good will in the trust agreement and no specific finding that it was transferred, it does not follow that it has not been transferred to the plaintiffs. We think it passed to the trustee by the transfer of all of

the property of the firm, and the court found that the sale by the trustee to plaintiffs included all of the property the former obtained.

The good will of a business is property, but it is tangible only as an incident connected with a going concern or by having locality or name, and is not susceptible of being disposed of independently. Haugen v. Sundseth, 106 Minn. 129, 118 N. W. 666, 16 Ann. Cas. 259; Southworth v. Davison, 106 Minn. 119, 118 N. W. 363, 19 L.R.A.(N.S.) 769, 16 Ann. Cas. 253; Holliston v. Ernston, 124 Minn. 49, 144 N. W. 415; Metropolitan Bank v. St. Louis Dispatch Co. 149 U. S. 436, 13 Sup. Ct. 944, 37 L. ed. 799; Slater v. Slater, 175 N. Y. 143, 67 N. E. 224, 61 L.R.A. 796, 96 Am. St. 605; Rawson v. Pratt, 91 Ind. 9, 12 R. C. L. p. 979.

Under a general assignment of all of a firm's property for the benefit of creditors, the good will of the business passes to a purchaser at the assignee's sale. Fish Bros. Wagon Company v. LaBelle Wagon Works, 82 Wis. 546, 52 N. W. 595, 16 L.R.A. 453, 33 Am. St. 72; Iowa Seed Co. v. Dorr, 70 Iowa, 481, 30 N. W. 866, 59 Am. Rep. 446. As a general rule, by the conveyance of a shop or store, the good will of the business carried on in it passes, although nothing is said about it, and such is the case where the assets of a firm are sold without express mention of the good will. Parsons, Part. 263; Snyder Mnfg. Co. v. Snyder, 54 Oh. St. 86, 43 N. E. 325, 31 L.R.A. 657.

4. The contention that this is an action by partners against a copartner and that such an action will not lie on a claim growing out of partnership transactions until the business is wound up, cannot be sustained because, as already stated, no copartnership relations existed between the parties at the time when the action was commenced.

5. It appeared at the trial that the full amount of the book account sued on had been paid while the action was pending. Nevertheless the court found that plaintiffs were entitled to recover the amount claimed, with interest and costs. Subsequently the findings were amended and a part of the conclusions of law was stricken out. As amended, the findings were that the account had been paid in full. Eliminating from the conclusions of law the words and figures stricken out, there still remains an order for judgment in favor of plaintiffs for $153.77, with costs and disbursements. Apparently through inadvertence the court failed to

correct the conclusions of law to conform to the amended findings. This should have been done. Upon the going down of the remittitur, the court is directed to amend the conclusions of law so as to read as follows: That defendant is not entitled to any relief upon his counterclaim and that plaintiffs are entitled to judgment against him for their costs and disbursements.

The order is reversed, and the case is remanded, with directions to amend the conclusions of law as above indicated. No statutory costs will be allowed in this court.