**WAWAK CO., Inc., v. KAISER et al.**
No. 6058.

Circuit Court of Appeals, Seventh Circuit.
June 8, 1937.
Rehearing Denied Aug. 5, 1937.

David K. Tone, of Chicago, Ill., for appellant.

George I. Haight, M. K. Hobbs, and William E. Lucas, all of Chicago, Ill., for appellees.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

### LINDLEY, District Judge.

This is an appeal from a decree dismissing for want of equity appellant's bill charging appellees with unfair competition and seeking an injunction and damages.

For some years before 1922, four corporations, Detmer Woolen Company, Bruner Woolen Company, Mason & Hanson, Inc., and Salzer & Wolf, Inc., had carried on in the United States sale of woolens and trimmings to tailors by supplying to the trade samples, mounted on style cards, which in turn were put into boxes with order blanks, envelopes addressed to the vendor and explanatory literature. This matter at times made use of certain trade-marks registered in the names of the four corporations. Appellee Kaiser was an officer and stockholder in the Detmer Woolen Company.

In 1922 the four corporations conveyed their property, including trade-marks, to a new corporation then organized under the name Detmer, Bruner & Mason, Inc., which we, in accord with counsel, shall refer to as the old corporation. This company did not manufacture but purchased woolens and trimmings in the market and sold them to retail merchants by the same means and in the same manner as the predecessor corporations had done. At no time did the old corporation make use of the registered trade-marks owned by the four merging companies but it registered and used certain other trade-marks. After the amalgamation, until the period pertinent in this cause, the Detmer Woolen Company was not the owner of any property or trade-mark and did not conduct any business.

In January, 1933, the old corporation determined to liquidate. Appellee Kaiser was vice president and active in the liquidation. The business of the old corporation had always been divided into two branches, designated as the New York and Chicago branches. The New York branch included roughly speaking the states east of Ohio; the Chicago branch covered the remainder of the United States.

On January 12, 1933, appellant made a proposal to the old corporation which the latter accepted. Thereby, for the sum of $28,000, appellant acquired the merchandise located in Chicago, including the right, in connection with its own name or that of the Ferris Woolen Company, to use "Successor to Detmer, Bruner & Mason, Inc. Chicago," in "any territory that is now being served by the Chicago branch." It was provided that the old company should not thereafter sell any merchandise in this territory or authorize any one else to do so under its name. The purchase covered also all customers' records and stencils, history cards, "Rand File" records, sample lines, and trimming books then in the office or in the hands of the trade. The old company agreed that appellant, at its own expense, might send under the old company's name and on its letterhead, to be approved by it, an appropriate circular letter to the trade in the Chicago territory stating that the sample lines and trimming books in the hands of the trade thereafter belonged to appellant and that appellant had undertaken to fill all future orders.

In pursuance of this contract, on January 29, 1933, appellant sent out, under the name of the old company, a circular letter which had been approved by the latter, in which it was said: "We are discontinuing our Chicago Branch, but having in mind the best interest of our customers, arrangements have been made with the Ferris Woolen Company, 325 W. Jackson Blvd., Chicago, Illinois to continue supplying our customers in the territory served by this branch. * * * In making this arrangement, we

feel that we have chosen a firm experienced in the Sample Woolen and Trimming business, and one that will be able to continue the same satisfactory service which it has been our pleasure to render you for so many years. Ferris Woolen Company, who will now succeed us in the territory served by our Chicago branch, will write you in a day or two advising when their new spring and summer lines will be ready for distribution." Simultaneously, appellant forwarded to the customers of the old corporation in the Chicago territory, under its own name, as successor to Detmer, Bruner & Mason, Inc., another letter similarly approved by the old corporation, in which it announced that it had succeeded the old corporation in the Chicago branch and that in pursuance with this arrangement all orders received from the old corporation's customers on or after January 16 would be filled by appellant.

Between January 12 and May 1, 1933, style cards with sample lines of woolens attached to them containing the words "Ferris Woolen Company, Successor to Detmer, Bruner & Mason, Inc., Chicago," in 3,415 sample boxes, containing approximately 275 to 300 style cards each, at a cost of approximately $27,000, were sent by appellant to the trade. At that time there were in the hands of the trade several thousand old style cards and trimming books. It is apparent that it was the intent that any business ordered from those style cards and order books should reach appellant.

On March 28, 1933, the Kaiser Corporation purchased from the old corporation the merchandise of the New York branch, the furniture and fixtures of the company wherever located, the accounts receivable, trade-marks and capital stock of the four corporations previously merged in the old corporation, and the list of customers of the New York branch. This contract recited that the old corporation assigned to the purchaser the good will of the business, subject, however, to the agreement between the old corporation and appellant, copy of which was made a part of the Kaiser purchase contract. It was agreed in the latter that the old corporation should cause its stockholders to change its name so that the purchaser might form a new corporation with the name of the old one or some similar one; but it was provided that nothing contained in the contract should authorize such corporation so organized to sell in any territory served by the Chicago branch of the old corporation.

On January 12, 1933, the old company changed its name to D-B-M Corporation and Kaiser caused to be incorporated under the laws of New York a new corporation with the name of Detmer, Bruner & Mason, Inc. This will be referred to as the new corporation.

Thereafter in April, 1933, Kaiser came to Chicago and began business, selling woolens and trimmings in the Chicago territory under the name of Detmer, Bruner & Mason, Inc. On May 5 he sent to the Chicago customers of the old corporation a letter under signature of Detmer, Bruner & Mason, Inc., saying, "You are one of our old and valued customers. * * * We thank you once again for your past patronage. * * * The business of Detmer, Bruner & Mason, Inc., has been re-established in Chicago at our old location, 205 West Monroe Street. * * *" At that time the new corporation had no old or valued customers. It had no past patronage. It could not properly re-establish the business of the old corporation if the covenants of the contract of sale to appellant were valid. The plain purport of the letter was that the new corporation was in fact the old one and that it had re-established and was continuing its business.

At the same time Kaiser, under the name of Detmer, Bruner & Mason, Inc., distributed to the customers of the old corporation in the Chicago territory sample boxes, containing woolens, mounted on style cards, and order blanks and return envelopes bearing the name of Detmer, Bruner & Mason, Inc. These were closely similar to the sample boxes, style cards, order blanks, and return envelopes formerly distributed to the old corporation and then held by its customers.

Shortly thereafter, on May 10, 1933, appellant filed its bill and on May 27, 1933, Kaiser sent out a letter, under the name of Detmer Woolen Company, saying that the right to do business under the name of the old corporation having been questioned by appellant, the former company and Kaiser, its president, were willing to relinquish and cease the use of the name Detmer, Bruner & Mason, Inc., pending the hearing of the suit, without prejudice to their legal rights, and that in the future, the business would be conducted under the name of Detmer Woolen Company.

As we have seen, the Detmer Woolen Company transferred all of its property and assets to the old corporation in 1922. It did not thereafter transact any business or use.

any trade-marks or own any property until May 27, 1933. Detmer Woolen Company, the new corporation incorporated on March 27, 1933, received from the Kaiser corporation, without consideration, a stock of merchandise and certain sums of money which had been taken to Chicago and deposited in a bank in the name of Detmer, Bruner & Mason, Inc., when Kaiser began business in Chicago about April 1. The employees who had formerly conducted the business under the name of the latter company thereafter conducted it under the name of Detmer Woolen Company. In this manner, the business initiated by Kaiser in Chicago passed from Detmer, Bruner & Mason to Detmer Woolen Company, an instrumentality controlled entirely by Kaiser.

The record is silent as to whether any of the style cards, sample books, and other material which Kaiser recalled were in fact returned. In the falls of 1933 and 1934 appellees sent to the customers of the old corporation in the Chicago territory trimming books on the cover of which were copied substantially the words, design, and lettering of appellant, and the inside cover of which is an exact duplicate of the words, figures, design, and coloring matter of appellant's except that the words "Detmer, Bruner & Mason" are found on appellant's exhibit and not on appellees'. Appellees forwarded also what was substantially a duplicate of appellant's style card, which had become its property under its contract of January 12, 1933, and sent to the trade an advertisement in which it was said, "And now we celebrate our Golden Anniversary * * * one hundred seasons of uninterrupted service. * * * Now after fifty years of successful endeavor we find, through mutual effort, we have become a national institution." This bore the address of Detmer Woolen Company, 205 W. Monroe street, Chicago, Ill., the same address that their circulars signed Detmer, Bruner & Mason, Inc., bore. The implication of the statement obviously was that the Detmer Woolen Company was continuing the business of the old corporation at its old address. The statements were untrue.

One hundred and twenty-five orders for trimmings and woolens intended for appellant were sent to appellees at 205 W. Monroe street. Thirty-two orders on the blanks of Ferris Woolen Company, successor to Detmer, Bruner & Mason, Inc., were sent to Ferris Woolen Company, but intended for Detmer Woolen Company. Of 9 orders

on the blanks of Ferris Woolen as successor, 6 intended for Detmer Woolen Company were sent to the Ferris Woolen Company, and 3 intended for the Ferris Woolen Company were sent to the Detmer Company. Customers wrote, inquiring as to whether Detmer Woolen Company was the same as Detmer, Bruner & Mason, Inc., and inquiring further why, if Ferris Woolen Company was successor to the latter, they were getting circulars from Detmer Woolen Company, stating "that they represent the Detmer line."

Upon these facts the District Court concluded that appellant was entitled to no relief and dismissed the bill for want of equity.

It is essential first to determine what appellant acquired by its contract of January 12, 1933. Among its acquisitions was the right, in connection with the name of Ferris Woolen Company, to use the words "Successor to Detmer, Bruner & Mason, Inc., Chicago." According to all lexicographers, a "successor" is one who succeeds or takes the place of another, State v. Andrews, 64 Kan. 474, 67 P. 870, 877; one who takes the place another has left and sustains the like part or character, Thompson v. North Tex. Nat. Bank (Tex.Com. App.) 37 S.W.(2d) 735; Webster's International Dictionary; 60 C.J. 985. Accordingly, under its contract of purchase, appellant succeeded and took the place of Detmer, Bruner & Mason, Inc., in the Chicago territory.

The contract further provided that the company to which appellant became successor should not thereafter sell merchandise in that territory and should not authorize any one else to do so. It further provided that the vendor would approve a proper letter to the trade setting up that appellant had succeeded to its business in the Chicago territory and that the sample books, trimming books in the hand of the trade, belonged to appellant and that the latter had undertaken to fill all future orders. This letter was written and mailed.

What is the legal effect of these covenants, to which appellees' rights were made subject by the contract of purchase by Kaiser from the old corporation at a later date? We have, in effect, a sale of all merchandise, sample books, trade records, and sample style cards, in fact, all of the paraphernalia used by the old corporation in conducting the business in Chicago, coupled with the promise that the vendor was not

to conduct the business or to permit anybody else to do so as its successor, but that appellant alone should operate in Chicago as its successor and fill all future orders.

■ Where a vendor sells all or the principal part of his merchandise and covenants not to engage within a specified territory, it has been held quite generally that the good will of the business within that territory passes as an incident to such contract. In 28 C.J. 738 it is stated that when the property and business rights are sold, good will, though not specifically mentioned, passes to the vendee as an incident. Thus in Canadian Club Beverage Co. v. Canadian Club Corp., 268 Mass. 561, 168 N.E. 106, where a company conveyed the property relating to one line of its business and discontinued the line, it was held, that the good will of the discontinued line passed to the purchaser, although it was not mentioned, the court announcing that where the sale agreement omits to mention good will at the time of the transfer of business, it is presumed to pass with the other assets. In Riddlesperger v. Malakoff Gin Co. (Tex. Civ.App.) 229 S.W. 636, the court similarly ruled. There the contract included a covenant that the vendor would not directly or indirectly operate a cotton gin in the community.

The following words have been held sufficient to imply a conveyance of good will: "Goods, wares and merchandise," Shafer v. Sloan, 3 Cal.App. 335, 85 P. 162; "Livery Outfits," Smith v. Webb, 176 Ala. 596, 58 So. 913, 40 L.R.A.(N.S.) 1191; "Partnership business," Johnson v. Bruzek, 142 Minn. 454, 172 N.W. 700; "Patronage," Kellogg v. Totten, 16 Abb.Prac.(N.Y.) 35; "Effects and Securities," In re David, 1 Ch. 378; "Effects and things," Barrow v. Barrow, 27 L.T.Rep.(N.S.) 431; "Business," Beatty v. Dickson, 3 Ont.W.R. 2; "Good Will," Shipwright v. Clements, 19 Wkly. 599. In Eisel v. Hayes, 141 Ind. 41, 40 N.E. 119, the vendor sold his butcher shop equipment and agreed not to engage in the butcher business in the vicinity. The court found that, considering the whole contract, the money paid was for the transfer of not only the equipment but also the good will. In Bessel v. Bethke, 56 N.D. 1, 215 N.W. 868, the vendor sold 48 shares of capital stock of a certain corporation and agreed not to engage in the business of that corporation within a certain radius for a period of ten years. The shares sold constituted the majority of the capital stock. The court held

that it was intended to sell the good will of the business.

■ Inasmuch as the old corporation sold to appellant all of its merchandise in the Chicago territory and the right to hold itself out as successor to the old corporation and convenanted not to engage in business and to co-operate in the furnishing of information to the trade that the future business would be conducted by appellant as successor, it is obvious that the good will of the business of the old corporation in the Chicago territory passed as an incident to the contract. That such was the intent is further corroborated by the fact that Kaiser, under the terms of his contract, was given a list of the customers of the New York branch but no list of the customers of the Chicago branch and that his purchase was subject to the rights of appellant under its previous purchase agreement.

■ The covenant not to engage in business or to permit others to do so in the Chicago territory was valid. Where such an agreement is limited as to time and place and is in other respects reasonable and proper, it must be upheld. Up River Ice Co. v. Denler, 114 Mich. 296, 72 N.W. 157, 68 Am. St.Rep. 480; Swanson v. Kirby, 98 Ga. 586, 26 S.E. 71; Smith v. Webb, 176 Ala. 596, 58 So. 913, 40 L.R.A.(N.S.) 1191. Such a covenant is in force as long as the vendee continues the business. Southworth v. Davison, 106 Minn. 119, 121, 118 N.W. 363, 19 L.R.A.(N.S.) 769, 16 Ann.Cas. 253; Cook v. Johnson, 47 Conn. 175, 177, 36 Am.Rep. 64; Tarry v. Johnston, 114 Neb. 496, 504, 208 N.W. 615; Foss v. Roby, 195 Mass. 292, 297, 81 N.E. 199, 10 L.R.A.(N.S.) 1200, 11 Ann.Cas. 571; Sklaroff v. Sklaroff, 263 Pa. 421, 106 A. 793; Webster v. Buss, 61 N.H. 40, 41, 60 Am.Rep. 317; O'Neal v. Hines, 145 Ind. 32, 36, 43 N.E. 946.

■ If a trader in his advertising matter imitates the form, color, and design of another to such extent that his advertising matter is calculated and intended to induce the public to buy his wares under the belief that they are buying those of his competitor, such action amounts to unfair competition. Coats v. Merrick Thread Co., 149 U.S. 562, 566, 13 S.Ct. 966, 37 L.Ed. 847; Lawrence v. P. E. Sharpless Co. (D.C.) 203 F. 762, 768; Miller Rubber Co. v. Behrend (C.C.A.) 242 F. 515.

■ Whether unfair competition exists is a question of fact, Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U.S. 118,

25 S.Ct. 609, 49 L.Ed. 972, and to succeed it is sufficient if the plaintiff show that the natural and probable result of the defendant's conduct would be to lead the public to purchase his goods in the belief that they are the goods of the plaintiff. If the action complained of will deceive the ordinary buyer purchasing under ordinary conditions, it is unfair. Miller Rubber Co. v. Behrend (C.C.A.2) 242 F. 515; Lawrence v. P. E. Sharpless Co. (D.C.) 203 F. 762; Coats v. Merrick Thread Co., 149 U.S. 562, 13 S.Ct. 966, 37 L.Ed. 847; McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828.

Proof that appellees copied the characteristic features of the design and structure of appellant's cards and literature, in so far as the latter included the features previously utilized by the old corporation, indicates an intentional imitation. In view of the copying of the covers of the trimming books in design and lettering, the language of the letters issued by appellees, indicating that they were the successor to the old corporation, the resulting confusion shown by the evidence, it is apparent that appellees brought themselves within the categories of the decisions cited.

■ Appellant makes no claim of ownership of any of the trade-marks and does not seek the right to use them. But it does complain of the use of copyrights belonging to the old company by appellees in the territory in which appellant was a successor to the old corporation's business. Its position is that appellees may not use the registered trade-marks of the old corporation in the territory where appellant is the successor to the good will of the company and that to permit the use of such trademarks in that territory constitutes an element of unfair competition.

If we give full force and effect to the covenants of appellant's contract, and the necessary implications thereof, it is apparent that it was the intent that appellant should receive the merchandise in the Chicago territory, the sample books, and all other paraphernalia material to the carrying on of the business with the right to hold itself out as successor to all the business of the old corporation and the indicia thereof. The action of appellees, whose contract was subject to that of appellant, in doing anything, as purchaser from the old corporation, savoring of unfair competition, tending to destroy appellant's rights, must be condemned. That customers were misled, that they were deceived and confused to ap-

pellant's detriment is apparent from the facts recited. There was confusion in orders, in correspondence, and in remittances.

What we have said is applicable also to the use of the name Detmer Woolen Company. The implications of the record are convincing that the name Detmer had been strictly associated and identified with the business of the old company; that the corporate name Detmer Woolen Company had been acquired by the old company and then had passed into "innocuous desuetude," but that the name Detmer was used in the trade as indicating the wares of the old corporation. When appellees began business in Chicago, they used the name of the old corporation. Upon objection, they changed to the Detmer Woolen Company, but thereafter they advised the trade that they were continuing the business in which they had engaged for one hundred seasons, and that they were dealing in "Detmer Woolens" at the same address where the old corporation had had its business. This action inevitably tended to confuse the trade; to create false impressions, and was, therefore, a trespass upon appellant's rights as successor to the old corporation in the city of Chicago.

We believe that appellees were guilty of unfair competition in the use of the name Detmer, in using the old company's trademarks in the Chicago territory, in the use of the term "Detmer Woolens," the similitude of its literature and its correspondence with the customers of the old corporation, and that appellant was entitled to an injunction against such action. The decree of the District Court is reversed with directions to proceed in accordance with the views herein expressed.