**WAWAK & CO., Inc., v. KAISER et al.**

No. 7950.

Circuit Court of Appeals, Seventh Circuit.

June 15, 1942.

Rehearing Denied July 16, 1942.

Edward A. Haight, George I. Haight, and Charles H. Lerch, all of Chicago, Ill., for appellant.

David K. Tone, of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

This appeal constitutes the second chapter in litigation first before us in Wawak Co., Inc., v. Kaiser et al., 7 Cir., 90 F.2d 694. The annals of the parties' relationship there appearing need no repetition here. The master to whom the accounting was referred, in pursuance of our mandate, recommended, and the court entered, judgment for $31,738 damages accruing to plaintiff because of defendants' acts condemned by our decision as unfair trade and competition. Defendants urge error (a) in the finding that substantial sales were taken from plaintiff by defendants' unfair competition; (b) in that the court found that the fall in defendants' sales after unfair competition ceased should be considered in determining liability; (c) in that the master made improper calculation of plaintiff's expenses in determining what plaintiff lost; and (d) in that the master, by stamping defendants' conduct as fraudulent, willful and wanton, fixed a wrongful standard of conduct, prejudicing defendants in the allowance of damages.

Extended evidence was produced before the master who presented a thorough report and, upon objection by defendants, a supplemental report, reviewing at length the evidence of both parties. He found that defendants' average sales per season before the decree for accounting entered were $203,511, and after that $112,579, a difference of 44.68 per cent. Plaintiff sold on the average per season $444,135 before the decree and $412,981 thereafter, a difference of 7.01 per cent. The combined totals of plaintiff's and defendants' sales before the decree were 18.85 per cent more than they were afterward. Since there was a depression in the trade in late 1937, the master adopted the figure 18.85 per cent as the decrease in sales of each plaintiff and defendants chargeable to the depression and, considering also other evidence, concluded that the percentage of loss of sales by defendants due to the decree was the difference between 44.68 per cent and 18.85 per cent or 25.83 per cent. In other words he found that plaintiff would have sold 25.83 per cent of defendants' deliveries if there had been no unfair competition.

In determining the extent to which plaintiff and defendants were in competition, the master divided defendants' sales into four groups. Class I included sales where both plaintiffs and defendants had sample lines with the same customers during the same season and defendants made sales to such customers. Defendants' sales in this class amounted to $552,576. Class II included sales made by defendants where both plaintiff and defendants had sample

lines with the same customer during the same season, but plaintiff withdrew and defendants continued. These amounted to $156,896. Class III included sales of defendants not within Class I and Class II, except miscellaneous sales. The total in this class was $990,894. Class IV included miscellaneous sales amounting to $105,406. In determining the effect of defendants' unfair competition, the master considered only Classes I and II, a total of $709,472 out of the grand total of $1,805,772. To this total of $709,472, the master applied the percentage of 25.83 per cent, arriving at the figure of $183,257 as the value of merchandise plaintiff would have sold in the absence of defendants' unfair competition. Adopting plaintiff's calculation of gross profit, viz., that it would have realized on such sales, 31.46 per cent, the master determined that plaintiff's gross profit on sales made by and lost to plaintiff was 31.46 per cent of $183,257, or $57,653.

Again adopting plaintiff's figures, the master found that if plaintiff had made all of the sales in Classes I and II, its cost would have been $100,331. But since plaintiff lost only 25.83 per cent of the sales, its proportionate cost would have been 25.83 per cent of $100,331, or $25,915, with the result that the difference between $57,653, representing lost sales returns, and $25,915 expenses, $31,738 he fixed as the amount of plaintiff's damages.

We shall not comment upon the evidence at great length, for after careful scrutiny of the record we believe that the master correctly analyzed and appraised the facts; that he applied no improper rules of law but reached the correct conclusion. Indeed, if the triers of fact erred, the error was on the side of defendants. The evidence would justify an allowance greater than that of which they complain.

Defendants contend that plaintiff has not proved that the damages assessed are definitely attributable to the wrong committed and that, in the absence of such proof, no reasonable approximation of damages can be fixed. Dickinson v. O. & W. Thum Co., 6 Cir., 8 F.2d 570, 575; Anchor Stove & Range Co. v. Rymer, 6 Cir., 97 F.2d 689, 691. Obviously, the burden was upon plaintiff to prove by competent and sufficient evidence its lost sales; it was aided by no presumption of law or fact that it would have made the sales that defendants made. Dickinson v. O. & W. Thum Co., 6 Cir., 8 F.2d 570, 575.

We believe, however, that the evidence was sufficient to justify the master's finding that plaintiff had sustained its burden and, in the absence of clear error on his part, the findings should be upheld. Crawford v. Briant, 10 Cir., 53 F.2d 754; Schock v. Malloy, 8 Cir., 26 F.2d 621; Cleveland Trust Co. v. Schriber-Schroth Co., 6 Cir., 92 F.2d 330. Though plaintiff's sales increased during the period of unfair competition and dropped after it was granted relief, defendants' sales also dropped and in much greater degree. The decrease was partly due to the depression in the trade. However, plaintiff's sales dropped only 7.01 per cent after the decree, while defendants' fell 44.68 per cent. Under all the evidence the master's finding that a falling off of 18.85 per cent was due to the depression is entirely reasonable. An examination of the record discloses that plaintiff's sales after relief from unfair competition dropped less than the average general decline due to the depression while defendants' sales, after being restrained, dropped approximately 26 per cent more than the average. The master was fully justified upon all the evidence, in finding that but for the unfair competition plaintiff would have made at least as many of the sales of defendants' as the master charged them with. Zane v. Peck, C.C.Conn., 13 F. 475, 476; American Saw Co. v. Emerson, C.C.W.D.Pa., 8 F. 806; see Lawrence-Williams Co. v. Societe Enfants Gombault Et Cie, 6 Cir., 52 F.2d 774, 779; Dallas Brass & Copper Co. v. Faries Mfg. Co., 7 Cir., 1 F.2d 930. If defendants made infringing sales to plaintiff's list of customers, and plaintiff was selling the same goods to the same customers, and plaintiff was able and willing to make such infringing sales, it is only reasonable to conclude that plaintiff would have made such sales if there had not been such infringement. Surely, the name Detmer Woolen Company had drawing power. This is clear since defendants expended substantial sums of money to acquire certain rights from Detmer, Bruner & Mason, Inc., including the right to copy their trimming books and style cards. It was contemplated that such acts of defendants would produce sales and it is fair to assume, in view of the facts, that they did produce sales,—sales which would have gone to the plaintiff if defendants had not resorted to such unfair competition.

Some of defendants' drop in sales might be explained by their cutting down the number of samples and salesmen. But the

master gave full weight to that fact. He believed that such actions could not account for the great difference in the fall in sales between plaintiff and defendants, and their comparative relations to the estimated drop due to the depression.

Once evidence of damage has been established, plaintiff may recover even though the amount is not capable of definite mathematical ascertainment. In such cases the triers of the facts must fix the damages by reasonable estimate and approximation. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 565, 51 S.Ct. 248, 75 L.Ed. 544; Straus v. Victor Talking Machine Co., 2 Cir., 297 F. 791, 802; Hedrick v. Perry, 10 Cir., 102 F.2d 802.

The master properly ascertained the cost of putting the infringed goods on the market by plaintiff, and subtracted it from the sale price. American Saw Co. v. Emerson, supra; Lawrence-Williams Co. v. Societe Enfants Gombault Et Cie, supra; 63 C.J. 569. He took account of the effect of the depression, the type of competition between plaintiff and defendants, and various other vital elements, necessary to reach a fair estimate.

Defendants complain because in his report the master found them guilty of "intentional wrong doing which was fraudulent, willful and wanton." He recited the facts appearing in the record supporting such conclusion. Defendants contend that this issue was not properly before the master and that the finding led him to adopt an erroneous yardstick for measuring defendants' liability. We think the presence of the finding wholly immaterial. The master did not because of that finding establish any lesser requirements upon the part of plaintiff in sustaining its burden of proving damages. The finding might well be completely ignored.

Irrespective of this, however, defendants' conduct has been condemned as intentional by us. In our opinion, 90 F.2d 694, we found that defendants had been guilty of "intentional imitation" and that, by their deliberately wrongful conduct, customers were misled, deceived and confused and that the acts constituted an intentional trespass upon plaintiff's rights. These findings were the basis for defendants' liability; according to the record, they continued even after our decision was announced. Their presence might well have justified the master in levying punitive damages but this he did not do.

Defendants further object to certain basic findings of the master upon which the latter fixed the damages. In ascertaining that the amount of gross profit plaintiff would have made if it had made the infringing sales was 31.46 per cent, the master adopted plaintiff's method of computation of net profit which it would have earned on the increased volume of sales if plaintiff had sold the goods sold by defendants. In making this computation, plaintiff took into consideration the cost of all goods sold. Plaintiff's business was divided into wholesale and sample trades, and although the record is not entirely clear, it seems that defendants' business is largely sample trade. Perhaps the master should have based his estimate of the cost of net sales made by plaintiff solely on the sample trade, or shown more clearly that defendants employed both wholesale and sample trade. But if plaintiff's computation was wrong, or if there were better evidence, defendants were free to make proper showing in rebuttal. Prima facie, plaintiff's evidence was sufficient. It may well be that the cost of net sales in plaintiff's wholesale trade is considerably higher than that in its sample trade. The evidence, however, does show that defendants' gross profit on such sales was 33.7 per cent, 1.24 per cent more than that of the plaintiff. The error, if any, apparently was in favor of defendants.

Defendants insist that the master, in estimating the difference in sales per season of defendants before and after the decree, failed to take into account that defendants had cut down their number of distributed samples and employees after our decision. The master took an average of the sales per season of defendants after the decree without considering this limitation upon their business. If he had done so, the loss of sales due to defendants no longer being able to sell as Detmer Woolen Company or as Detmer, Bruner & Mason, Inc., would have been less than that estimated, since there would have been three factors entering into the computation instead of two, loss of sales due to depression, loss of sales due to a decrease in samples and sales force, and loss of sales due to compelling defendants to cease unfair competition. Again the error, if any, reacts in defendants' favor.

Defendants made numerous other objections to the master's report which we deem it unnecessary to discuss. Even though some findings of the master were not arithmetically exact, they are not prejudicial. It seems clear that the master was extremely lenient toward defendants in fixing damages. Under the first two classes of sales, there had been a gross sale of $709,472 by the defendants from May 9, 1933 to October 2, 1937, the period of unfair competition. The master gave no consideration to over $900,000 other sales. The damages assessed, $31,738, were approximately 4.5 per cent of less than one-half the actual gross sale. The master further found that only about 25 per cent of the total gross sale of defendants under the names of Detmer Woolen Company and Detmer, Bruner & Mason, Inc., would have been made by plaintiff if no unfair competition had existed. Yet it is clear that defendants received a great amount, if not all, of their business until 1937 from the practice of unfair competition. Although it is not probable that plaintiff would have made all of the sales accomplished by defendants, it is highly probable that it would have made in excess of 25 per cent thereof if such unfair competition had not existed. In all respects the master gave the benefit of the doubt to defendants.

The rule in unfair competition is the same as that in infringement of trade-mark. The Supreme Court has recently said of the latter: "If it can be shown that the infringement had no relation to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol, the burden of showing this is upon the poacher.· * * * In the absence of his proving the contrary, it promotes honesty and comports with experience to assume that the wrongdoer who makes profits from the sales of goods bearing a mark belonging to another was enabled to do so because he was drawing upon the good will generated by that mark." Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 62 S.Ct. 1022, 1024, 86 L.Ed. ——. As we said in Roseland v. Phister Mfg. Co., 7 Cir., 125 F.2d 417, at page 420, 139 A.L.R. 1013: "If a reasonable basis of computation be afforded by the evidence, that is sufficient although only an approximate result be obtained. Eastman Kodak Co. v. Southern Photo Material Co., 5 Cir., 295 F. 98."

The judgment is affirmed.