WILLIAM SOHIER & another *vs.* CHARLES B. JOHNSON.

The testator, William P. Winchester, was, in 1847, the surviving member of the firm of "E. A. & W. Winchester," which established a manufactory of soap in C. in 1821, and used the firm name as a trade-mark. In that year he formed a partnership with the defendant for the purpose, as the articles stated, "of continuing the business in the same name and style of the late firm." The articles provided that the testator might dissolve the partnership at any time, (in which case the defendant should have no claim except for his share of accrued profits,) and might by his will give the right to his relatives to become members of the firm, which should be continued under the same name. The testator died in 1850, and by his will directed that his trustees should allow the firm of "E. A. & W. Winchester," if the defendant should be a member thereof, to continue in possession of the testator's land at a certain rent, and, if it desired, to borrow $100,000 from his personal estate, if not needed for payment of bequests, unless all his trustees (one of whom should always be a member of the firm) should deem it proper to withdraw such real and personal property; and he named the plaintiffs and the defendant executors and trustees. The defendant continued the business under the same name, first alone and

then with partners, using the firm name as a trade-mark, until 1867, when the partnership was dissolved. In 1868 the executors and trustees sold the manufactory with the fixtures and utensils to L. *Held*, that the plaintiffs could not maintain a bill in equity to restrain the defendant from using the name "E. A. & W. Winchester" as a trade-mark, and to compel him to join in an agreement to transfer to L. the right to use it.

MORTON, J. The plaintiffs and the defendant are joint executors and trustees under the will of William P. Winchester. The bill, filed February 10, 1871, avers that the late firm of E. A. & W. Winchester for many years carried on the manufacture of soap in Cambridge; that they had adopted and used the name of the firm as a trade-mark, to designate and mark their soap; that the testator at the time of his death was the sole remaining member of said firm, and was the sole owner and possessor of said trade-mark; and that upon his death it became the property of and vested in the executors and trustees under his will. It further alleges that the plaintiffs have made an agreement with John Livermore to grant to him the exclusive right to use said trade-mark, and that the defendant refuses to join in said agreement, claiming the right to use the trade-mark himself. The prayer of the bill is to restrain the defendant from using the trade-mark and to order him to execute the agreement granting the exclusive right to it to Livermore.

Among the undisputed facts it appears that the firm of E. A. & W. Winchester established the manufactory of soap at Cambridge in the year 1821, the testator being one of the members of the firm. They adopted the firm name, "E. A. & W. Winchester," as a trade-mark, which they stamped upon the bars of soap and upon the boxes in which the soap was packed. In 1847 the testator was the only surviving member of the firm. In that year he admitted the defendant into the firm, under articles of copartnership, the preamble of which recited that "the only surviving partner, William P. Winchester, for the purpose of continuing the business in the same name and style of the late firm, hereby admits as a copartner Charles B. Johnson, of Roxbury, upon the following conditions." It is necessary to refer particularly to only three of the articles. The first, third and sixth are as follows:

" Article 1. Said William P. Winchester reserves to himself the entire control and management of the business of the firm and the right to dissolve the copartnership at any time he may desire so to do, and in the event of a dissolution of the copartnership by the said William P. Winchester, said Charles B. Johnson shall withdraw from the firm without making any claim whatever other than for the payment of his portion of the profits, if any should have accumulated."

" Article 3. Any and all additions, repairs, improvements or alterations, together with any and all expenses which may be incurred in, upon or about the premises known as the Provision and Soap and Candle Establishment at East Cambridge, which may be undertaken for the better conducting of the business of this copartnership, shall be paid from the joint funds of the firm and carried to profit and loss account, and the said Charles B. Johnson shall make no claim or allowance whatever for such expenditures, but the said William P. Winchester, in consideration thereof, shall make no charge of rent for his portion of said establishment, (of which he is owner of one moiety,) the rent for the other moiety being fixed by the will of the late Stephen Winchester."

" Article 6. Said William P. Winchester reserves the right to associate with him as partner or partners, either of his sons, nephews, relatives or other persons at such time as he may desire, and in the event of the decease of the said William P. Winchester, his sons and other relatives (not exceeding three in number) as alluded to in the will of said William P. Winchester, shall have the right to become partners of the firm, which is to be continued under the name of E. A. & W. Winchester, they to receive such equitable share of the profits as may under such circumstances be agreed upon."

The firm thus formed continued without any change until the death, in 1850, of William P. Winchester, who left a will, of which the seventh article is as follows :

" Article 7. If it shall happen that I have at the time of my decease any interest or share in the capital or joint property in the partnership of E. A. & W. Winchester, now composed of

Charles B. Johnson and myself, or that said firm shall be in possession of and using any real estate belonging to me, for the purposes of said partnership, I hereby authorize the trustee or trustees acting under this will, to allow said partnership, if either of my sons or sons-in-law, or my cousin Amasa Winchester, Esquire, or my nephew Stephen S. Winchester, or my partner and friend Charles B. Johnson, shall be a member thereof, at the time of, or shall become members of the same within six months after my decease, to hold the said real estate as long as they may desire, at a clear net rent of six per cent. per annum upon the valuation of said real estate, including all fixtures, as the same may be returned by the appraisers at the Probate Court, the said firm making all additions, alterations and repairs at their own expense, and paying all taxes levied upon the same, and the cost of all insurance against fire. I also authorize, empower and direct, most decisively, that my said trustees, the survivor or survivors, shall allow the said copartnership, if including any or either of the above named persons, to borrow, retain or take as a loan, if they desire to do so, the amount of my personal property or share in said firm at the time of my decease, not exceeding, however, the sum of one hundred thousand dollars, at the rate of six per cent. per annum, payable quarterly, provided that it does not become absolutely necessary to appropriate a portion of such personal share in the said copartnership to pay the bequests made by this will, and in this event, only the balance remaining shall be so loaned or retained. And such real and personal estate may be retained and used as aforesaid (unless for reasons which all of the said trustees shall deem sufficient to make the withdrawal of said real and personal estate expedient and proper) by said firm as long as either or any of the persons before named shall be, become or continue members of said firm; and one at least of the trustees acting under this will shall always be a member of the said firm, the senior partner having this right over and above any other member of the firm; but said firm shall, during the period for which said loan exists, be held to transact a cash or short credit business, and not, under any circumstances, to make any

sales of provisions or other merchandise, in which they may deal, upon a credit exceeding four months."

After the death of William P. Winchester, the defendant continued the business alone until 1854, and after that with partners, using the firm name and trade-mark of "E. A. & W. Winchester," until 1867, when the firm became embarrassed and it was dissolved by the defendant. Since such dissolution the defendant has continued to manufacture soap and to use the trade-mark. In 1868, the executors and trustees under the will of William P. Winchester sold the manufactory at Cambridge with all the fixtures and utensils to Livermore.

Upon these facts it may be conceded that in 1847 Winchester had a valuable property in the trade-mark which he might dispose of in connection with the business. But it was property of a peculiar character, closely resembling that which he had in the good will of the business, and we think that by the articles of partnership between Winchester and the defendant, the good will and the right to use the trade-mark passed to the new firm. The trade-mark, being the name of the new firm and an incident of the business of the firm, would pass by implication, there being nothing in the articles showing a different intention. *Bury* v. *Bedford*, 4 De G., J. & S. 352. It is true that by the first article if Winchester had elected during his lifetime to dissolve the partnership, the property of the firm, including the trade-mark, would have reverted to him. But while the firm continued the title was vested in it. He did not so elect, and this article becomes inoperative by his death. The death of Winchester worked a dissolution of the firm, and it may be that, if there had been no provision for the continuance of the business, the good will and the right to use the trade-mark would have vested in his legal representatives. But the sixth article of the partnership agreement and the seventh article of the will make distinct provisions for the continuance of the business under the same firm name. Construing them together, it seems to us clear that both the good will of the business and the right to use the trade-mark, at the death of Winchester passed to the new firm. They both contemplated that a new firm was to be established with the right to con

tinue the business and to use the old name. The estate of Winchester was not to remain subject to the liabilities of a partner. His real estate in use by the firm at the time of his death, and his share of the personal property of the firm to a limited amount, were to be leased and lent to the new firm, which was to pay six per cent. upon their valuation. It is clear that Winchester did not regard the trade-mark as a part of his share of the personal property to be lent to the firm. It is not mentioned, and no provision is made for determining its value. The will contemplates the possibility that the new firm may continue the business without borrowing any of the personal property of the estate. They are to borrow, if they desire to do so ; if the personal property is needed to pay bequests, the trustees cannot lend it to the firm ; the trustees had a right to withdraw it at any time they deemed expedient and proper, and it was their duty to withdraw it if all the persons named in the will ceased to be members of the firm, or if the firm transacted any other than a " cash or short credit business." It cannot be supposed that the testator intended that the right to use the trade-mark could be withdrawn from the firm, and that the firm should go on using the old name of E. A. & W. Winchester, while a rival house had the exclusive right to use the same name as a trade-mark. The articles of copartnership and the will gave the new firm the right to continue the business and to use the old name ; the effect was to convey to it by necessary implication the good will and the right to use the trade-mark. The trade-mark was the device or symbol used to identify the article manufactured, and the right to use it would pass with the business and good will as an incident, unless something appears to show a different intention of the parties. The plaintiffs contend that the trade-mark " was a property incident and attached to the " Provision and Soap and Candle Establishment " at Cambridge ; " but we do not think it can be regarded as a local trade-mark, attached as incident to the real estate at Cambridge. It is obvious that if the parties in interest had at any time seen fit to sell that real estate and continue the business at some other place, it would have had no effect upon the character or fitness or value of the trade-mark, but it would remain attached to the good will and business wherever carried on.

Upon the whole case we are of opinion that the plaintiffs can-not maintain this bill. They are entitled to the relief prayed for, only upon the ground that the trustees, as the legal representa-tives of Winchester, have the exclusive right to use this trade-mark. For seventeen years after the death of their testator the firm of which the defendant was a member owned and enjoyed the exclusive use of the trade-mark. We know of no principle by which upon the dissolution of that firm it reverted to and became the property of the estate of the testator. *Bowman* v. *Floyd*, 3 Allen, 76.

We do not consider it necessary to decide whether this trade-mark is so far property that it could be sold, detached from the business in which it has been used, to a stranger, nor whether the defendant retained the right to use it after the dissolution of the firm in 1867. It is decisive of this case that the plaintiffs have no interest in it. *Rogers* v. *Taintor*, 97 Mass. 291. *Emerson* v. *Badger*, 101 Mass. 82. *Bill dismissed.*

*C. T. Russell*, for the plaintiffs.
*G. W. Baldwin*, for the defendant.