# PRACTICE REPORTS.

## SUPREME COURT.

ROWLAND N. HAZARD and JOHN C. HAZARD agt. JOHN ·R. CASWELL and WILLIAM M. MASSEY.

*Trade-mark — Injunction — When and how copartnership name may be continued by successors — rights under.*

The words "Established 1780," or "Established A. D. 1780" which have been conspicuously displayed and used upon the signs, labels, bill heads &c., of a drug house for a great number of years, may strictly and rightly be denominated a trade-mark, and the right to the exclusive use of such words will be protected by a court of equity.

Where one partner retires from a firm and the other members of the firm, with the consent of the retiring member, continue the business under the old firm name, as they may do under the statute (*Laws of* 1854, *chapter* 400), they will be held to have succeeded to the business of the old firm.

As the right to use the words "Established 1780," or "Established A. D. 1780" when the partnership between the plaintiffs and the defendant ended, belonged to the business, it passed to the successors of the firm.

If the successor to the business of the manufacture of one compound or one article has a right to the continued and sole use of the name or mark by which the public recognizes its genuineness, so the successors in business to those who placed upon the market many compounds, all marked and designated by certain well known words, are entitled to the continued and sole use of such words which distinguished the preparations. And what is true in regard to articles manufactured by predecessors in business and continued by successors, is also true in regard to new compounds.

Where the facts showed that the plaintiffs took the legal statutory step to perpetuate the old business as its successors, and the defendant permitted them to carry it on as such, under the old name for two years; that the defendant sold to the plaintiffs the whole stock, building, signs, labels, &c., and in four formal and legible receipts the defendant calls. the plaintiffs "successors to the old firm:"

*Held*, that plaintiffs are, in fact, the successors of the old firm and entitled to use a combination of words which was the property thereof, because it designated and marked it as well and as clearly as its name did.

*Special Term, September*, 1878.

APPLICATION by plaintiffs for an injunction restraining the defendants from using upon their signs and labels, as druggists, the words "Established 1780."

*Henry E. Howland*, for plaintiffs.

*John L. Hill*, for defendants.

WESTBROOK, *J.* — The plaintiffs, Rowland N. Hazard and John C. Hazard, are druggists and copartners, carrying on business as such, under the name, style and firm of Caswell, Hazard & Co., at No. 132 Thames street, in the city of Newport, state of Rhode Island, and also at the corner of Broadway and Twenty-fourth street, and at the corner of Sixth avenue and Thirty-ninth street, in the city of New York. Prior to the 31st day of July, 1876, the business had been conducted by such plaintiffs in connection with the defendant John R. Caswell, on which day (see agreement for winding up partnership, and also the bill of sale of the Newport store) the partnership of the three terminated. The business had been carried on by the three from the year 1872, and the plaintiffs owned twenty-three thirtieths thereof, and the defendant Caswell seven-thirtieths.

From the 1st day of January, 1867, to July, 1872, the same firm name had been used, and during that period the plaintiff Rowland N. Hazard, the defendant John R. Caswell, and one Philip Caswell, Jr., were the members. In July, 1872, the said Philip Caswell, Jr., sold out his interest in the business to the plaintiff Rowland N. Hazard, and John C. Hazard became a member thereof, the firm name remaining unchanged; and the business was continued under the

old name and style of Caswell, Hazard & Co., pursuant to chapter 400 of the Laws of 1854, entitled "An act allowing the continued use of copartnership names in certain cases."

The business which was conducted by the plaintiffs and the defendant Caswell was a continuation of that which had been established at Newport in 1780 by one Charles Feke. This, I think, the papers in the cause fully establish, and for years prior to the withdrawal of the defendant John R. Caswell, the date of which was July 31, 1876, the words "Established 1780," or "Established A. D. 1780," had been conspicuously displayed upon the signs, bill heads and labels of the firm. During the time of such display the firm had been known by various names, but during all the time the defendant Caswell was connected with the business, which was from 1859 to 1876, he, in common with his partners, by a conspicuous display of the words upon the signs, labels, bill heads, &c., of his firm, asserted and declared to the world that the business carried on had been established in the year 1780. This assertion, made continually during a period of seventeen years, the defendant Caswell is in no situation to controvert, and its truth, resting upon his own long-continued assertions, as well as upon the positive evidence of its entire accuracy, must, for the purposes of this motion, be assumed.

When the copartnership between the plaintiffs and the defendant Caswell ended, in 1876, it is evident that the right to use the words "Established 1780," or "Established A. D. 1780," belonged to the business, and passed to the successors of the firm. Used, as these words and figures were, to identify a drug house, and to give it character by its age, and such use, continued for many years, necessarily distinguishing it from any other, it is quite apparent, that the exclusive enjoyment of such use is as valuable, as a species of trade-mark, to the continuers of that business, as the exclusive enjoyment of a trade-mark upon a well-known article is valuable to the manufacturer thereof. Indeed, the reasons which protect the owner in the sole use of a name or mark upon a single

article are especially applicable to the business of these plain-
tiffs who, if they do succeed to the old business, must com-
pound and sell many articles which had been previously
compounded and sold by their predecessors of the genuine-
ness of which the public is to be assured by the use of the
old declarations upon the labels. Those statements which
appeared upon the packages containing the various prepara-
tions of the firm for many years, identified its goods, and each
one, or rather each form of the statement (for both convey
the same thought) can strictly and rightly be denominated "a
trade-mark." Every argument sustaining the right to exclu-
sively use a name or trade-mark to designate one manufac-
tured article, may be used in this case with a force multiplied
by the number of preparations which are continued to be put
up by those who continue the old business. If the successor to
the business of the manufacture of one compound or one article
has a right to the continued and sole use of the name or mark
by which the public recognizes its genuineness, so the suc-
cessors in business to those who placed upon the market many
compounds, all marked and designated by certain well-known
words, are entitled to the continued and sole use of such
words which distinguish the preparations. And what is true
in regard to articles manufactured by predecessors in business,
and continued by successors, is also true in regard to new
compounds. The fact that a business is a continuation of one
long established, when communicated to the public, is of
actual value to its owners. In the case of a drug and medi-
cine house, the formulas, receipts and prescriptions are not
only preserved for the purpose of reproducing articles which
have for years been compounded, but they are also the foun-
dations from and by which new results are continually pro-
duced, and which may legitimately be regarded as the growths
of the business of former years. As such new preparations
have their origin from such old business and are really the
enlargement thereof, why should not the owners of both the
old and new compounds own and enjoy as property a combi-

Hazard agt. Caswell.

nation of words, which not only designates their preparations and business but which gives value to both, because they thus bear a mark which carries with it the reputation acquired during the years that are past. Very clearly, a man's name could not be used by another, without the consent of its owner, to impose upon the public, under that disguise, the business or goods of the latter as those of the former. A mark or a combination of words may be used to distinguish the owner's goods and business as well as his name, and when thus distinguished and known to the public, precisely the same arguments which entitle an individual to the use of his own name apply. No man may injure another's business and impose upon the public alike, by selling his own goods so disguised by the use of either the other's name or mark as to induce the buyer to believe they are those of the person whose name or mark they bear. The argument is as sound when applied to an entire business as it is when applied to a single article, as applicable to marks or combinations of words known by the public as indicating a particular article or business as to the owner's name, which only indicates and declares the same thing. The right of protection in the use of names or trade-marks rests, it seems to me, upon the same principle. The owner of either is entitled to its entire value and worth in the reputation and character it may give to any article offered to the public, or to any business conducted. Either the name or mark, and the one just as much as the other, may distinguish an article or business and the more honored the name or mark is by public favor the more valuable it is to the owner of the article or business. Entertaining these views, which seem to me very simple and clear, if the question before me was new I should find no difficulty in deciding that the successors in business to the old firm of Caswell, Hazard & Co. own, and are entitled to use, the words which distinguish both their general business and their specific preparations. Their right, however, so to do rests upon many cases. See, among others, *The G. & H. Man. Co.* agt. *Hall* (61 *N. Y.*, 232),

Hazard agt. Caswell.

*Sohier* agt. *Johnson* (111 *Mass.*, 238), *Shipwright* agt. *Carpenter* (19 *Weekly Rep.*, 599), *The Jos. Dixon Crucible Co.*, agt. *Guggenheim* (7 *Phila.*, 408 ).

The next question which this cause presents is, have the plaintiffs succeeded to the business of the old firm of Caswell, Hazard & Co. ?   A careful examination of the papers requires me to give to this interrogatory, also, an affirmative answer, for the following reasons :

First.  The defendant Caswell retired from the firm on July 31, 1876, and the present plaintiffs continued the business at the old places under the firm name of Caswell, Hazard & Co.  It was done under the statute before referred to (*Chapter* 400 *of the Laws of* 1854).  The use of that firm name, and the continuation of the business by the plaintiffs, as its successors, has been uninterrupted and unquestioned.  The right to use the firm name depended upon the fact that it was a continuance of the old business, as the act clearly imports.  Mr. Caswell, having for two years permitted the use of the firm name by the plaintiffs under the statute, upon the assumption that they were the successors to the business thereof, is in no condition now to gainsay it.  There are times when a party must speak or be precluded from so doing. The act of the plaintiffs was undoubtedly known to him. Without question he allows them thus to carry on business and expend their money.  Certainly, if Caswell is not entirely estopped from questioning the title of the plaintiffs as successors to the old firm, his long silence is very high evidence in construing the agreement of settlement and separation.

Second.  By bill of sale, dated October 7, 1876, which also fixes July 31, 1876, as the date when his copartnership with plaintiffs ended, the defendant Caswell conveyed to the plaintiffs all his " right, title and interest in the stock in trade and property of every kind of the copartnership in Newport, in the county of Newport, in the state of Rhode Island, formerly carried on by the parties under the firm name of Caswell,

Hazard & Co., excepting only book accounts outstanding 31st day of July, A. D. 1876, to have and to hold the same to the said Rowland N. Hazard, and John C. Hazard, and their assigns forever." The property thus conveyed, and which the plaintiffs "and their assigns" could have and hold "forever," included the signs upon the building containing the words "Established A. D. 1780," and the labels, bill heads, letter heads, &c., which contained similar language. If it was not understood that the plaintiffs were to continue the old business, why was this property sold without any reservation whatever? It being so sold, it follows, at least so far as the Newport store and business are concerned, that the plaintiffs legitimately succeed to the old business by purchase, and, as that was a part and parcel of the general business of the firm, it affords also a very strong presumption that all the business was to be conducted by the plaintiffs as the successors of the old firm.

Third. By articles of agreement between the parties, dated October 7, 1876, and which, in the commencement thereof, are styled "Agreement for winding up the copartnership affairs of Rowland N. Hazard, John C. Hazard and John R. Caswell, which ended 31st July, 1876," the plaintiffs assume the lease of the Thirty-ninth street store (the Twenty-fourth street store they already had leased), and the fixtures in both are transferred to them. The agreement also declares: "The bottle moulds heretofore used by the copartnership are to become the property of the Hazards for use in their business." If the plaintiffs did not succeed to the business why the transfer to them of signs, inscriptions and the modes of making them? Unless they were to be treated as successors these purchases, in part at least, were useless. No such thought could have been in the minds of either, for the moulds of the bottles, which would indicate the continuance of the business by the plaintiffs, are declared to be "*for use in their business.*"

Fourth. In four receipts, three whereof are dated March

12, 1878, one for $124,31 in full for Caswell's interest in the "labels bearing the firm name of Caswell, Hazard & Co., Caswell, Mack & Co. and Hazard & Caswell;" another for $54,78 in full for his interest "in and to the apparatus, or utensils on hand;" another for $115,39 for his property "in and to the bottles, excepting ginger ale bottles, bearing the firm name of Caswell, Hazard & Co., Caswell, Mack & Co., and Hazard & Caswell;" and one for $6,678,49, dated February 23, 1878, in full for his share of, and interest in, "the stock of surgical instruments and appliances, the plaintiffs are styled and called "*successors to the old firm.*" The fact is not forgotten that Mr. Caswell says he signed the receipts carelessly without noticing the words quoted. Mr. R. N. Hazard, on the other hand, deposes that Caswell read them carefully, and that the interlineation which occurs in one, "excepting ginger ale bottles," was made at Caswell's suggestion. The probabilities are against the evidence of Mr. Caswell on this point. It is hardly to be supposed any business man would sign four formal receipts, in which the words "successors to the old firm" are conspicuous, without observing them. He must, from all the facts, be assumed to know their contents, and knowing their contents the meaning of these words were to him, as to every other business man, clear and unmistakable.

From the facts, then, that the plaintiffs took the legal statute step to perpetuate the old business as its successors, and the defendant Caswell has permitted them to carry it on as such under the old name for two years; that the defendant Caswell sold to the plaintiffs the whole stock, building and signs at Newport; that he also sold to them the signs, labels and bottle moulds of both New York stores, and that in four formal and legible receipts he calls the plaintiffs "successors to the old firm," the conclusion is irresistible that the plaintiffs are in fact the successors of the old firm and entitled to use a combination of words, which was the property thereof, because it designated and marked it as well and as clearly as

its name did. Either of the facts enumerated might not, perhaps (though this is not conceded), if it stood alone, be sufficient to justify the court, at this stage of the cause, in granting the relief asked. Each one, however, is very strong, and taken together, their concurrent testimony is too clear to be overcome.

Having now shown that the words "Established 1780," or Established A. D. 1780," fairly belong to the plaintiffs as trade-marks to continue the manufacture of old articles or new, and as indicative of the fact that they succeed to the good-will and reputation of a business long established, and that such term is in fact their sign and mark as distinguishing their business, it follows that they are entitled to the relief asked for. The defendants, in their new places of business, are not entitled to use a mark or sign which conveys an untruth, because it injures the plaintiffs and the public alike. No citation of authority on this point is necessary as the principle is so well understood as to be elementary.

The application of the plaintiffs for an injunction is granted. The form of the order, including the amount of the undertaking, will be settled on notice.