CANADIAN CLUB BEVERAGE COMPANY *vs.* CANADIAN CLUB CORPORATION.

Suffolk. May 15, 1929, May 24, 1929. — October 2, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Trade Name. Sale,* Of business, Construction of contract of sale. *Good Will. Equity Jurisdiction,* To enjoin corporation's use of name, Laches, Plaintiff's clean hands. *Corporation,* Officers and agents, Sale of assets. *Contract,* Construction. *Unlawful Interference.*

A Massachusetts corporation, incorporated in 1919 to make and sell "syrups or extracts . . . used in the preparation of drinks," manufactured and sold syrups and extracts, and also bottled and sold beverages, made from such syrups under the name "Canadian Club." In February, 1922, by a vote of a majority of its directors at a meeting duly called, but, so far as appeared, without a vote of its stockholders, it sold to another corporation the bottling plant and equipment "together with all labels used in connection with the bottling and tonic business conducted by . . . [it] and together with the right to use the 'same Canadian Club' for all purposes except in connection with the manufacture of syrups," and agreed "not to engage in or conduct either directly or indirectly in the bottling of tonic business in greater Boston for the period of twenty-five (25) years," and further agreed "to redeem all tonic cases & bottles now out among their customers and sell same to said grantee at thirty cents per case." Thereafter the first corporation ceased to do any bottling or selling of ginger ale or beverages and limited its business to the manufacture and sale of syrups and extracts. In September, 1923, the first corporation was adjudicated a bankrupt. Its trustee in bankruptcy purported to sell

all the assets of the corporation, including its good will, trade marks and trade names to one, by whom they were sold to a third corporation. The second corporation by a suit in equity sought to enjoin the third corporation from using the name "Canadian Club" in the business of bottling and selling ginger ale and other carbonated beverages. It appeared that the defendant, although it had not sold beverages since 1922, had licensed dealers throughout the United States and Canada to use the name "Canadian Club," the result of which had been confusion among purchasers, many of whom had purchased the goods of licensees believing them to have been manufactured by the plaintiff. *Held*, that

(1) The plaintiff bought from the first corporation the assets of the bottling department as an established business, and the right to use the trade name "Canadian Club" in the manufacture, bottling and sale of ginger ale was included in the assets purchased, even if the word "same" preceding the words "Canadian Club" in the contract of sale were not a typographical error;

(2) The first corporation could dispose of its bottling department which was in actual operation, and give to the plaintiff a right to use in connection with the plant purchased the trade name under which the products of the department were sold;

(3) Its board of directors had authority to dispose of that plant and their vote was sufficient for that purpose;

(4) The defendant's acts were of a character to entitle the plaintiff to relief.

In the bill in the suit above described, the plaintiff relied on two bills of sale bearing the same date in February, 1922, the one described above and a conditional bill of sale specifically conveying the trade mark and trade name "Canadian Club." The master found that the conditional bill of sale was entirely spurious. At the hearing before a master, the plaintiff waived its claim on the conditional bill of sale as soon as it learned of its spurious character, and relied only on the bill of sale above described. The defendant contended that the plaintiff did not come into court with clean hands. *Held*, that, as the plaintiff did not in any way rely on the fictitious instrument, it could not be said to have such necessary connection with the relief it asked as to fall within the principle that one who comes into equity must come with clean hands.

In construing written instruments, when the language is doubtful and the parties with diverse interests have from the beginning adopted and acted on a particular construction, such construction will be of great weight and will usually be adopted by the court.

The plaintiff corporation changed its name to "Canadian Club Beverage Company" on April 5, 1922. On or about December 12, 1924, the defendant changed its name to "Canadian Club Corporation." The bill in equity was filed on May 9, 1927. From 1924 the defendant continued to operate under its corporate name in the manufacture and sale of syrups and extracts, and its business was carried on either in the same place where the plaintiff conducted its business or in the same locality with no objection made by the plaintiff. *Held*,

that laches of the plaintiff barred it from enjoining the defendant from the use of its corporate name, although it was entitled to an injunction restraining the defendant from using the name "Canadian Club" in the manufacture and sale of carbonated beverages and from licensing others to use this name in connection with the manufacture and sale of such beverages.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on May 9, 1927, and described in the opinion.

The suit was referred to a master. In its bill, the plaintiff relied on two instruments dated February 7, 1922. The first purported to be a bill of sale by William Ireland, Incorporated, to the plaintiff, then White Club Beverage Company, of certain described personal property "and any and all other bottling equipment now on the premises numbered 1169 Tremont Street, Roxbury District of said Boston, together with all labels used in connection with the bottling and tonic business conducted by said William Ireland Incorporated, and together with the right to use the same 'Canadian Club' for all purposes except in connection with the manufacture of syrups. [The instrument continued] The said William Ireland Incorporated as a corporation and William Ireland as an individual hereby agree not to engage in or conduct either directly or indirectly in the bottling of tonic business in greater Boston for the period of twenty-five (25) years from the date hereof, or to supply syrups, essences or flavoring extracts to any person, firm or corporation engaged either directly or indirectly in the bottling or tonic business in said Greater Boston. The William Ireland Incorporated further agrees to redeem all tonic cases & bottles now out among their customers and sell same to said grantee at thirty cents per case." The second instrument relied on by the plaintiff purported to be a conditional bill of sale by William Ireland, Incorporated, to the plaintiff under its then name, reciting that, whereas the William Ireland, Incorporated, had that day "sold, transferred, assigned and set over" to the plaintiff "certain fixtures and machinery for the manufacture of beverages, together with the right to the

use of certain trade marks and the trade name known as 'Canadian Club,' registered or pending registration," and it was "the mutual agreement and understanding of both parties . . . to make the transfer of the use of the aforementioned trade marks and the trade name 'Canadian Club' and any other trade marks or trade names heretofore enjoyed by the William Ireland, Inc. absolute unto the said . . . [plaintiff] upon certain conditions," the William Ireland, Incorporated did "sell, transfer, assign, and set over unto the said . . . [plaintiff] all its right, title, and interest in and to all the trade marks and trade names, particularly the trade name known as 'Canadian Club,' whether or not registered or pending registration heretofore used by the Seller for the purpose of manufacturing beverages, syrups, and flavoring extracts, including such trade marks and trade names as the use of which has been already granted to . . . [it] under a bill of sale executed on this date."

The master found that this conditional bill of sale was not executed on or about February 7, 1922, was not a genuine instrument, but was fabricated; and at the hearing the plaintiff did not rely on it, but relied on the other bill of sale and on oral evidence that the property so sold included the trade name "Canadian Club."

Other material facts found by the master are stated in the opinion. The suit was heard upon the master's report by *Wait*, J., who found and ruled as follows: "The court finds that the plaintiff has not sustained the burden of proving that the contract . . . [between the plaintiff, then White Club Beverage Company, and William Ireland Incorporated, dated February 7, 1922] was ratified by William Ireland, Inc., and finds and rules that the plaintiff by its purchase of the bottling business of William Ireland, Inc. did not acquire an exclusive right to the trade name Canadian Club as used upon beverages made from formulas or extracts of William Ireland, Inc.; and orders that decree enter dismissing the bill."

A final decree dismissing the bill accordingly was entered. The plaintiff appealed.

*T. Hunt & E. S. Rogers* of Illinois, for the plaintiff.

*F. L. Simpson,* (*C. H. Stoddard* with him,) for the defendant.

CARROLL, J. This suit is to restrain the defendant from using the name "Canadian Club" in the business of bottling and selling ginger ale and other carbonated beverages, from licensing others to use this name in the sale of ginger ale and other beverages, and from using the corporate name "Canadian Club Corporation." Both parties contend they received title to the trade name through the corporation "William Ireland, Incorporated." The decisive question is, Did William Ireland, Incorporated in February, 1922, sell to the plaintiff (then called the White Club Beverage Company) its business of bottling and selling ginger ale and other carbonated drinks, the good will of that business, and the trade name "Canadian Club" as used in connection with it? The case was heard by a master. A decree was entered dismissing the bill; the plaintiff appealed.

The William Ireland, Incorporated, a Massachusetts corporation, was organized in September, 1919. It manufactured and sold syrups and extracts, and also bottled and sold beverages made from such syrups. Most of the beverages were sold in the vicinity of Boston. The syrups and extracts were sold to dealers manufacturing beverages and had a wider territorial sale. The syrups and beverages manufactured by William Ireland, Incorporated, were sold by it under the name "Canadian Club" until February 7, 1922. On that date the plaintiff purchased from the Ireland company the bottling plant and equipment, and thereafter William Ireland, Incorporated, continued in the manufacture of syrups and extracts at No. 1169 Tremont Street, Boston, "confining itself exclusively to the said syrup and extract business." Its office was on the street floor and its laboratory in the basement. The plaintiff carried on the bottling business in the same location on the street floor of No. 1169 Tremont Street. William Ireland, Incorporated, used the name "Canadian Club" in marketing its syrups "everywhere, except in Greater Boston," while the plaintiff sold its bottled beverages under the same trade name.

It appeared that prior to the sale of February 7, 1922,

the William Ireland, Incorporated, desired to dispose "of the bottling plant and such equipment of the corporation as related to the bottling and sale of beverages as contrasted with the syrup and extract phase of the business," and on January 3, 1921, contracted to sell its bottling plant and equipment by a conditional sale agreement to the firm of Lawrence and Weild. Prior to December, 1921, the William Ireland, Incorporated, repossessed itself of the property thus contracted to be sold. At a meeting of the stockholders held December 20, 1921, it was voted "to dispose of the Bottling Plant and equipment to the best advantage." It did not appear that "the provisions of law and the by-laws, with respect to notice to stockholders of proposed meetings, had been complied with." Negotiations were held by the representatives of the plaintiff and of the William Ireland, Incorporated. On February 7, 1922, a majority of the directors of the latter company, at a meeting of which due notice was given, passed a vote authorizing the treasurer to sell the bottling plant and equipment for $8,000, part in cash and part in the promissory notes of the White Club Beverage Company. It is not questioned that the notes were paid. On this date an instrument was executed purporting to sell the property therein described "together with all labels used in connection with the bottling and tonic business conducted by said William Ireland Incorporated, and together with the right to use the 'same Canadian Club' for all purposes except in connection with the manufacture of syrups. The said William Ireland Incorporated as a corporation and William Ireland as an individual hereby agree not to engage in or conduct either directly or indirectly in the bottling of tonic business in greater Boston for the period of twenty-five (25) years from the date hereof. . . . The William Ireland Incorporated further agrees to redeem all tonic cases & bottles now out among their customers and sell same to said grantee at thirty cents per case."

In September, 1923, William Ireland, Incorporated, was adjudicated bankrupt. The trustee in bankruptcy duly sold to Amy Johnson all the assets of the corporation including

its good will, trade marks and trade names. Johnson sold these rights to the Canadian Extract Company (a predecessor of the defendant), a corporation organized November, 1923, to engage "in the business of manufacturing and selling extracts and syrups," which syrups and extracts were sold under the name "Canadian Club." In December, 1924, the name of the Canadian Extract Company was changed to Canadian Club Corporation. In May, 1926, the defendant notified a maker of seals or "crowns" not to sell crowns bearing the name "Canadian Club" to any one except licensees of the defendant, and refused a license to the plaintiff to sell Canadian Club Dry Ginger Ale in Boston. The master found that "Outside of this notice to the United Metal Seal Company and the refusal to grant such license for Canadian Club Dry Ginger Ale, no attempt was made on the part of the defendant to stop the plaintiff's use of the trade mark 'Canadian Club.'"

One contention of the defendant is that the vote of the directors to sell the bottling plant and equipment did not give authority to the treasurer to convey the trade name "Canadian Club" and to agree not to compete with the purchaser. The plaintiff contends that the vote authorized the treasurer to sell the bottling plant and equipment as a going concern; that in respect to the bottling and sale of ginger ale and carbonated beverages the treasurer could sell the right to the trade name as a part of that business; and that, even if the trade name were not mentioned in the bill of sale, the sale of the bottling business carried the trade name. William Ireland, Incorporated, according to its agreement of association was formed to make and sell "syrups or extracts . . . used in the preparation of drinks." In addition it bottled and sold beverages made from such syrups under the name "Canadian Club." Its directors decided to dispose of the business of bottling and selling ginger ale and such products. As expressed by the master, the corporation was in need of funds and it was thought best "to dispose of the bottling plant and such equipment of the corporation as related to the bottling

and sale of beverages as contrasted with the syrup and extract phase of the business." There is no contention by the plaintiff that the defendant sold any part of the extract or syrup business or the right to use the trade name "Canadian Club" in the marketing of syrups and extracts. Its contentions are that it bought from the owner the assets of the bottling department as an established business, and that the trade name "Canadian Club" in the manufacture, bottling and sale of ginger ale was one of the assets purchased.

1. We are of opinion that this contention of the plaintiff is sound. The good will of a business including its trade name may be sold as an incident of the business. *George G. Fox Co.* v. *Glynn,* 191 Mass. 344, 348. Even where the sale agreement omits to mention good will in the transfer of a business, it is presumed that the good will passes with the other assets. *Sohier* v. *Johnson,* 111 Mass. 238, 243. *Hoxie* v. *Chaney,* 143 Mass. 592. *Morgan* v. *Rogers,* 19 Fed. Rep. 596, 597. See *Russia Cement Co.* v. *LePage,* 147 Mass. 206; *Lothrop Publishing Co.* v. *Lothrop, Lee & Shepard Co.* 191 Mass. 353. As we construe the findings of the master, the bottling department was a part of the business of the William Ireland, Incorporated, until sold to the predecessor of the plaintiff. It was then an established business and a going concern. It was contemplated that the Ireland corporation would cease to carry on this department, and that the plaintiff would continue it. Evidently the plaintiff purchased the equipment for the purpose of continuing the bottling business. The Ireland company sold the "labels," and agreed to redeem the cases and bottles in the possession of its customers and to sell them to the plaintiff at the stipulated price. The sale of the labels, and the bottles and cases possessed by the customers, indicated that the bottling business was a going concern, that it was intended the plaintiff was to continue the bottling business. *Sohier* v. *Johnson, supra. Hoxie* v. *Chaney, supra.* The acts of the William Ireland, Incorporated, show that it intended that the right to use the trade name passed by the sale to the plaintiff. The Ireland com-

pany ceased to do any bottling or selling of ginger ale or beverages. It limited its business to the manufacture and sale of syrups and extracts. While the plaintiff conducted the bottling business on the same premises where the Ireland company's business of marketing and making syrups was carried on, it was not until 1926 that Stoddard, who in 1924 secured control of the defendant corporation, refused a license to the plaintiff for Canadian Club Dry Ginger Ale; and aside from this and the notice to the United Metal Seal Company no attempt was made by the defendant to prevent the use of the trade name by the plaintiff.

It seems improbable that the William Ireland, Incorporated, intended to reserve to itself the use of the name "Canadian Club" in the bottling department, when it ceased to carry on this business and the plaintiff continued the business at the same place where the Ireland company continued its syrup and extract business, each corporation using the trade name on its products. In construing written instruments, when the language is doubtful and the parties with diverse interests have from the beginning adopted and acted on a particular construction, such construction will be of great weight and will usually be adopted by the court. *Ovans* v. *Castrucci*, 267 Mass. 600, 605, and cases cited.

It is also significant that the Ireland company was organized to make and sell syrups and extracts; when the Canadian Extract Company was formed in 1923 this company also was limited to the making and sale of syrups and extracts. During the time the conditional buyer under the agreement made in January, 1921, was in possession, he also bottled and sold beverages. The Ireland company was paid the purchase price. This company and its successors must have known the plaintiff was using the trade name. It made no attempt to stop this use until 1926 when the defendant refused a license to the plaintiff. We find nothing in the master's report to justify the assumption that the use of the name "Canadian Club" by the plaintiff or its predecessor was permissive. The conclusion is warranted that the name was used under a claim of right, and that the prop-

erty in the trade name was sold to the plaintiff in February, 1922.

The records of the William Ireland, Incorporated, of February, 1922, were lost, but it was found that the vote authorizing the sale was passed by a majority of the directors, and that due notice of the meeting was given to all of the directors. They had authority to dispose of the bottling department. G. L. c. 156, §§ 4 (c), 25. See *Geddes* v. *Anaconda Copper Mining Co.* 245 Fed. Rep. 225, 233. We know of no reason why the William Ireland, Incorporated, could not sell a department of its business and give to the purchaser of that part the right to use in connection with the branch purchased the trade name under which the products of the department were sold, especially if the business was not merely potential but actually existing. See *Coca-Cola Bottling Co.* v. *Coca-Cola Co.* 269 Fed. Rep. 796, 806.

The defendant has not itself sold any beverages since the sale of February, 1922, but it has licensed dealers throughout the United States and Canada to use the name "Canadian Club." The result has been confusion among purchasers, and many have purchased the goods of licensees believing them to have been manufactured by the plaintiff. These acts of the defendant are sufficient to give the plaintiff relief. The defendant by licensing others to use the trade name in the sale of beverages put it in their power to deceive the public and unfairly compete with the plaintiff. *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154. *Reading Stove Works, Orr, Painter & Co.* v. *S. M. Howes Co.* 201 Mass. 437. See *W. B. Manuf. Co.* v. *Rubenstein*, 236 Mass. 215; *Henry Perkins Co.* v. *Perkins*, 246 Mass. 96. The trade name "Canadian Club" was registered by the Ireland company and a certificate issued by the Secretary of the Commonwealth February 12, 1921. In 1926, the trade mark "Canadian Club" was registered. There is nothing in these facts to prevent the plaintiff from restraining the use of the trade name by the defendant. See *United Drug Co.* v. *Rectanus Co.* 248 U. S. 90, 98. The master found that no claim was made by the White Club Beverage Company "as of on or about February 7, 1922, that it had

purchased the trade name or trade mark 'Canadian Club.'" We must construe this finding in connection with the other findings showing the use of the trade name, the acts of the parties, the language of the bill of sale and all the circumstances. We think this finding means that the plaintiff did not in words claim the right to use the name, because it used the name openly under a claim of right, and supposed it had bought this right and was not required expressly to announce that it had a right to what it purchased. Our conclusion on this branch of the case is that the vote of the directors was broad enough to include good will; that the trade name "Canadian Club," even if not mentioned in the bill of sale, passed with the sale; and that there is nothing to show that the plaintiff, when it acquired the trade name, limited its efforts in the sale of beverages to any particular territory. In the written contract of February 7, 1922, these words appear: "together with all labels used in connection with the bottling and tonic business conducted by said William Ireland, Incorporated, and together with the right to use the same 'Canadian Club.'" If the word "same" preceding the words "Canadian Club" is an error for the word "name," then the right to use the trade name "Canadian Club" was expressly granted to the plaintiff and Ireland had authority under the vote of the directors to make this assignment. If there was no mistake in using the word "same," the name would pass as an asset of the Ireland company and a part of its bottling equipment.

2. The defendant also contends that relief should be denied the plaintiff because it does not come into court with clean hands. This contention is on the assumption that the plaintiff based its right to relief on a conditional sale agreement alleged to be dated February 7, 1922, by which William Ireland, Incorporated, purported to sell to the White Club Beverage Company, Inc., the right to use "certain trade marks and the trade name known as 'Canadian Club,' registered or pending registration," on condition that the buyer should pay the notes given under the "bill of sale of even date." This conditional sale agreement was signed by the William Ireland, Incorporated, Wm. Ire-

land, treasurer, and the White Club Beverage Co., Inc., N. A. Trent, president. In the plaintiff's bill it was alleged that the trade mark and trade name as used in connection with carbonated beverages passed to the plaintiff by the bill of sale of February 7, 1922, and further that the trade name and trade mark became its property under the conditional sale agreement. The master found that the conditional sale agreement was not executed on February 7, 1922, and was not a genuine instrument but was fabricated; that the responsibility "for the creation of this instrument rests upon either" Ireland or Trent or both of them; that both Ireland and Trent were called by the plaintiff as witnesses; that the plaintiff stated, after the facts concerning the conditional sale agreement appeared, that it did not rely on this document: "we don't ask the master to find that it conveys anything to the plaintiff, and so far as we are concerned, you may disregard it." It did not appear on what date this writing was made, or that Trent was employed by the plaintiff or acting for it when the instrument was written. It was not shown that Trent was authorized by the plaintiff to act for it in the fabrication of the conditional sale instrument, or that the plaintiff knew that this agreement was not a genuine one when suit was brought.

In our opinion the fraud of Ireland and Trent does not bar the plaintiff's recovery. It bought the trade name "Canadian Club" under the sale duly authorized when it purchased the bottling plant and equipment with its machinery, labels and other assets. It is not to be deprived of its rights thus acquired by the unauthorized acts of Trent and Ireland in making a spurious document relating to a trade name and trade mark registered or about to be registered, especially when the plaintiff had no knowledge of the fabrication and repudiated the transaction as soon as it learned it was not genuine. The plaintiff by its statement before the master and its refusal to rely on the false instrument did all that could be done to clear itself of misconduct; and, although the instrument was at one time relied on, when the plaintiff discovered the fraud it repudi-

ated it. In such circumstances where a party has a meritorious claim he should not be deprived of relief. *Comstock* v. *Thompson*, 286 Penn. St. 457. 21 C. J. 187. See *Lawton* v. *Estes*, 167 Mass. 181, 183. As the plaintiff does not in any way rely on the fictitious instrument, it cannot be said to have such necessary connection with the relief asked for as to fall within the principle that one who comes into equity must come with clean hands. *Beekman* v. *Marsters*, 195 Mass. 205, 214. *Lurie* v. *Pinanski*, 215 Mass. 229, 230. *Howe* v. *Chmielinski*, 237 Mass. 532, 535. *Moore Drop Forging Co.* v. *McCarthy*, 243 Mass. 554, 564. It does not appear that this defence was set up in the answer. As the plaintiff was not a party to the fraud and repudiated it as soon as it was discovered, the conduct of Ireland and Trent does not affect the plaintiff so as to deprive it of its rights under the valid sale of the business.

3. The plaintiff asked that the defendant be restrained from using the corporate name "Canadian Club Corporation." G. L. c. 155, § 9. This statute provides that a corporation shall not assume the name of another corporation or assume a name so similar thereto as to be likely to be mistaken for it. The plaintiff's name was changed to "Canadian Club Beverage Company" on April 5, 1922. On or about December 12, 1924, the defendant changed its name to "Canadian Club Corporation." The plaintiff's bill in equity was filed May 9, 1927. From 1924 the defendant continued to operate under its corporate name in the manufacture and sale of syrups and extracts, and its business was carried on either in the same place where the plaintiff conducted its business or in the same locality. During these years no objection was made by the plaintiff and no attempt made to restrain the use of the corporate name in the sale of syrups. Under these circumstances we think the plaintiff was guilty of laches and cannot now restrain the use of this corporate name, and there is no finding that in selling syrups under its corporate name the defendant deceived the public. See *Creswill* v. *Grand Lodge Knights of Pythias of Georgia*, 225 U. S. 246.

It follows that the decree is to be reversed and a decree entered restraining the defendant from using the name "Canadian Club" in the manufacture and sale of carbonated beverages, and from licensing others to use this name in connection with the manufacture and sale of such beverages.

*Ordered accordingly.*