STEVEN ABRAMS & others[1] *vs.* STEPHEN R. LISS & others.[2]

No. 01-P-975.

Barnstable. October 3, 2001. - February 13, 2002.

Present: GREENBERG, DOERFER, & COHEN, JJ.

*Injunction. Practice, Civil,* Preliminary injunction. *Contract,* Agreement not to compete. *Good Will. Partnership,* Good will.

A single justice of this court applied proper legal standards in allowing, pendente lite, a preliminary injunction enjoining the defendants from opening a retail clothing store that would compete with the plaintiff's store, and there was reasonable support in the record for her evaluation of factual questions, where an implied covenant not to compete arose from the circumstances of the case, in which former partners remained in business in separate locations. [753-755]

This court declined to pass upon the argument of a defendant in a civil action that little, if any, good will existed in association with a clothing store that sold primarily seasonal merchandise and that relied on tourists and seasonal residents, where the argument was never raised prior to appeal, and where the question of the extent of good will and the degree to which its transfer required noncompetition raised issues of fact [755-756]; further, this court determined that the length of a preliminary injunction ordered by a single justice of this court, enjoining the defendant from competing with the plaintiff's retail clothing store for a period of eighteen months, was not unreasonable [756].

CIVIL ACTION commenced in the Superior Court Department on April 2, 2001.

A petition for relief from the denial of a preliminary injunction, filed in the Appeals Court on May 29, 2001, was heard by *Dreben,* J.

*Dana A. Curhan* for the defendants.

*Richard M. Russell* for the plaintiffs.

GREENBERG, J. This is an appeal by Stephen and Dawn Liss

---

[1]Sally Boudreau and Clothing by Nira, Inc.

[2]Newport Apparel Corporation and Dawn Liss.

(Liss) and the Newport Apparel Corporation from an order entered on June 29, 2001, by a single justice of this court, the effect of which was to allow, pendente lite, a preliminary injunction, an application for which had been denied in the Superior Court. A judge of that court had refused to enjoin the defendants from opening a retail clothing store under the name "Newport Apparel Corporation" in Provincetown. Without an injunction, Liss would have engaged in competition with "Clothing by Nira," a retail store that the plaintiff, Steven Abrams, and Liss had formerly run as a partnership, with the added result, according to Abrams, that certain suppliers would not ship goods to that store while the underlying litigation concerning the legality of Liss's Provincetown store remained undecided.

A single justice of this court has the authority to enter such an order, however rare the exercise of that power may be. See *Edwin R. Sage Co.* v. *Foley*, 12 Mass. App. Ct. 20, 22-23 (1981); *Jet-Line Servs., Inc.* v. *Selectmen of Stoughton*, 25 Mass. App. Ct. 645, 646 (1988). Nor is there dispute as to the criteria that must be demonstrated before a preliminary injunction may issue. See *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 616-618 (1980). We need not repeat those principles here. It is also familiar law that an appellate court, reviewing such an order pursuant to G. L. c. 231, § 118, second par., does not "substitute [its] judgment for that of the [issuing] court, where the records disclose reasoned support for its action." *Edward R. Sage Co.* v. *Foley*, 12 Mass. App. Ct. at 26. See *Carabetta Enterprises, Inc.* v. *Schena*, 25 Mass. App. Ct. 389, 392 (1988). Accordingly, we must determine whether the single justice applied proper legal standards and whether there is reasonable support in the record for her evaluation of factual questions. See *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. at 615.

We recite the salient facts found in the record. For many years prior to the spring of 2000, Abrams and Liss owned and managed six retail clothing stores in Massachusetts and Rhode Island. Despite its corporate form, the "Clothing by Nira" stores were run by Abrams and Liss as a partnership, each partner dividing responsibilities, profits, and debts. Two of the stores were located in Provincetown, one each in Hyannis and

Fall River (the latter store also served as a warehouse), and two were situated in Newport, Rhode Island. In the winter of 1999-2000, following a personal disagreement, they ended their business relationship and went separate ways. It was agreed (with nothing written) that Abrams would operate the two Provincetown stores under the "Clothing by Nira" name, and Liss would operate the remaining four stores by some other name. Consistent with their accord, Abrams conveyed to Liss certain equipment fixtures, inventory, automobiles, and leasehold interests, all as related to Liss's stores, which he would run under the name of "Newport Apparel Corporation."

Things did not go according to plan. The present litigation arose out of ensuing conflicts between the parties. One concerned credit and payments intended for Newport Apparel which apparently were misdirected to Clothing by Nira. There was strife over the division of liability for prior obligations to creditors and, prophetically, with the transfer of good will associated with the "Clothing by Nira" name.

Liss filed a complaint in the Superior Court, claiming that Abrams had breached their dissolution agreement and raising the foregoing issues. In due course, Abrams learned that Liss intended to establish a Newport Apparel store in Provincetown, contrary to what Abrams had perceived was their understanding at the time they separated — that neither would compete with the other. This information was brought home to him, in part, by vendors that informed Abrams that they would no longer supply his store (Abrams had closed one of the Provincetown locations of Clothing by Nira after the dissolution) with inventory, at the direction of Liss. As a result, Abrams filed the instant complaint seeking, among other things, to enjoin Liss from opening a competing store in Provincetown.[3] As we have stated, a Superior Court judge denied relief, but a single justice of this court granted the injunction.

On appeal, Liss has abandoned the initial contention that no implied covenant not to compete arose under the circumstances of this case. Liss no longer disputes that the voluntary division of partnership assets between the parties, in these circumstances,

[3]The parties have since consolidated this litigation with the complaint that Liss had previously filed in the Superior Court.

constituted a sale by which good will also was transferred. The cases in support of this proposition are legion. See *Tobin* v. *Cody*, 343 Mass. 716, 720-721 (1962), upon which the single justice relied in reaching her conclusion. See also *Old Corner Book Store, Inc.* v. *Upham*, 194 Mass. 101, 104-105 (1907); *Foss* v. *Roby*, 195 Mass. 292, 296-297 (1907); *Certified Pest Control Co.* v. *Kuiper*, 1 Mass. App. Ct. 201, 204-205 (1973), and cases cited. "The good will of a business including its trade name may be sold as an incident of the business," despite the parties' failure to express it. *Canadian Club Bev. Co.* v. *Canadian Club Corp.*, 268 Mass. 561, 568 (1929).

By establishing that good will impliedly passed between Abrams and Liss, there is, additionally, the implication that each party may not compete so as to derogate from what was given away. The same cases to which we have referred are consistent with this view. See, e.g., *Tobin* v. *Cody*, supra. Contrast *United Tool & Indus. Supply Co.* v. *Torrisi*, 356 Mass. 103, 106-108 (1969); *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. at 618-620. Settled authority holds that these implied covenants are enforceable, if reasonable in time, space, and in their effect on the public interest. See *Cap's Auto Parts, Inc.* v. *Caproni*, 347 Mass. 211, 216 (1964); *Certified Pest Control Co.* v. *Kuiper*, 1 Mass. App. Ct. at 205.

Finally, though not always explicit in the cases we have cited, there is the proposition that an implied covenant not to compete arises when former partners remain in business in separate locations. While none of the cases we have examined and cited in our opinion directly address this question, the issue was considered, albeit in a slightly different context, in *Canadian Club Beverage Co.* v. *Canadian Club Corp.*, 268 Mass. at 513-514. The case involved William Ireland, Inc., which until 1922 had bottled and sold carbonated beverages in Boston as well as making and selling syrups and extracts at the same plant for distribution outside of Boston. In that year, the plaintiff purchased the bottling plant and operated next door to Ireland, which remained in the syrup business. See *id.* at 565-566. As part of the transaction, Ireland agreed not to engage in bottling, directly or indirectly, for twenty-five years. See *ibid.* By 1923, Ireland went bankrupt, but its assets were sold to a successor

who resumed the syrup business. See *id.* at 566-567. After the successor began bottling and licensing the "Canadian Club" name to others, the reported litigation eventually ensued. See *id.* at 567.

A master, whose findings were incorporated into a final decree, found that one of the sales agreements between Ireland and the plaintiff included the trade name "Canadian Club." See *id.* at 570-571. However, a judge of the Superior Court disagreed and ruled that the plaintiff had not sustained its burden of proving that it had acquired an exclusive right to the trade name "Canadian Club" and thus refused to enjoin Ireland's successor from using the same trade name. See *id.* at 565. The court held, among other things, that the parties' agreement must have contemplated that Ireland's business would cease to carry on the bottling aspect of its business, thus affording the "Canadian Club" trade name protection in the bottling and beverage licensing industry. See *id.* at 568-569. The same reasoning applies here. The single justice correctly employed the presumption that good will passes with other assets, even when the sale did not involve the entire business operation.[4]

Liss's main argument on appeal, however, is the related assertion that there is little, if any, good will associated with a clothing store that sells primarily seasonal merchandise and relies on tourists and seasonal residents. First, we note the argument was never raised below and may be deemed waived. See *Currens* v. *Assessors of Boston*, 370 Mass. 249, 254 (1976); *Bergendahl* v. *Massachusetts Elec. Co.*, 45 Mass. App. Ct. 715, 723 (1998), cert. denied, 528 U.S. 929 (1999). In any event, the extent of good will, and the degree to which its transfer requires noncompetition, are issues of fact, not law, see *Martin* v. *Jablonski*, 253 Mass. 451, 456 (1925); *Stefanski* v. *Gonnella*, 15 Mass. App. Ct. 500, 502-503 (1983), and the materials which the defendants have furnished in support of their theory are not informative. Liss cites no record support for the contention that Abrams's store caters exclusively to tourists and seasonal residents nor for the assertions regarding purchasing behavior of

---

[4]Notably, the Supreme Judicial Court relied on this presumption instead of the express covenant not to compete found in the parties' agreement. See *Canadian Club Bev. Co.* v. *Canadian Club Corp.*, 268 Mass. 561, 568 (1929).

customers (presumably requiring expert testimony). For these reasons, we decline to pass upon Liss's main argument at this early stage of the case.

The other contention raised by Liss is that the need for protection of good will, in the present circumstances, dissipated by the time the injunction had issued because Liss did not try to open a competing store until the second summer after the partnership with Abrams had dissolved. Clothing by Nira, the argument goes, had one full tourist season without the presence of Liss's competing store. Under the terms of the single justice's injunction, Liss must close the store for the second and third seasons, which Liss claims is beyond the scope of what is reasonable, especially for an implied covenant not to compete. Compare *Slade Gorton & Co.* v. *O'Neil*, 355 Mass. 4, 8-9 (1968) (holding a period of eleven months sufficient to protect a former employer's good will interest); *Ferrone* v. *Mucci*, 335 Mass. 87, 88 (1956). There is nothing to the argument.

The single justice explained that the implied covenant here arose out of the allocation of stores and assets between the parties and was necessary to give to the purchaser what was sold to him. See *Marshall Engine Co.* v. *New Marshall Engine Co.*, 203 Mass. 410, 424 (1909). Abrams's affidavit, which was before the single justice, specifically noted that he depended on the Provincetown stores as his sole source of income. We have upheld longer implied covenants not to compete than the one established here. See *Tobin* v. *Cody*, 343 Mass. at 723-724, and cases cited. Moreover, eighteen months is a reasonable time limit because it covers a single store in one town, and Liss may still operate four other locations (thus, Liss's claim of irreparable harm from the injunction is unconvincing). We conclude that Abrams was entitled to a preliminary injunction, and the single justice's order granting such injunction is affirmed.

*So ordered.*